UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN Re: GRAÑA Y MONTERO S.A.A.     REPORT AND
SECURITIES LITIGATION             RECOMMENDATION
                                  CV 17-1105 (JMA) (ARL)

                                  CLASS ACTION
─────────────────────────────────────────────

This document relates to:

ALL ACTIONS
------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

This action was filed on February 27, 2017, seeking relief under the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of all purchasers of Graña y Montero S.A.A. ("Graña" or the "Company") American Depository Shares ("ADS") from July 24, 2013 through February 24, 2017. Before the Court, on referral from Judge Azrack, is the motion by Lead Plaintiff for an order, pursuant to Federal Rule of Civil Procedure ("Rule") 4(f)(3), directing alternative service of the summons and Consolidated Amended Class Action Complaint for violation of the Exchange Act on non-U.S. defendants Monica Miloslavich Hart, Jose Graña Miro Quesada, Hernando Graña Acuna, and Mario Alvarado Pflucker (collectively, the "Individual Defendants"). Plaintiffs ask the Court for an order permitting service on Defendant Hart either through Simpson Thacher & Bartlett LLP ("Simpson Thacher") or the Company's registered agent for service of process, and on the remaining Individual Defendants by (i) registered and/or overnight mail at their last known addresses, and (ii) to the extent applicable, service on the attorneys representing them in related criminal matters in Peru. For the reasons stated below, the undersigned recommends that Plaintiffs' motion for an order directing alternative service be granted in part denied in part.

## BACKGROUND

**I.      Facts**

This action was brought on behalf of all those who purchased the ADSs of Graña between July 24, 2013 and February 24, 2017.  Graña is a Peruvian corporation that provides engineering and construction, infrastructure, real estate and technical services throughout Latin America.  *Id*.  The Individual Defendants were senior executive officers of Graña during the relevant period.  ECF No. 22 at ¶ 31.  Defendant Pflucker was, until March 2, 2017, Graña's Chief Executive Officer and a member of its Board of Directors.  *Id*. at 26.  Defendant Hart was at all relevant times, and continues to serve as Graña's Chief Financial Officer.  *Id*. at 27.  Defendant Graña Miro Quesada joined the Company in 1968, and was a Director and Chairman of the Board of Directors from 1996 until his resignation on February 27, 2017.  *Id*. at 28.  He also served as the executive president of the Company from 1996 until March 2011.  *Id*.  Defendant Graña Acuna joined the Company in 1977, and was a Director from August 1996 until his resignation on February 27, 2017.  *Id*.

According to Plaintiffs, this action arises out of a money laundering and bribery investigation known as *Lava Jato*, or Operation Car Wash.  Pl. Mem at 1.  Plaintiffs allege that between 2005 and 2011, Graña, through its subsidiaries, participated in multiple consortia led by Brazilian construction giant Odebrecht S.A. ("Odebrecht"), in the concessions for high-value public works projects.  In public statements, Graña maintained that these public works projects were obtained through a competitive bidding process and that its internal controls over financial reporting were effective.  In truth, according to Plaintiffs, these public works projects were obtained through the payment of bribes to former Peruvian presidents by Odebrecht, with Graña contributing millions of dollars to these bribes.  Pl. Mem. at 2.  Plaintiffs allege that a Peruvian

judge subsequently determined that there was ample evidence that Graña executives, including Defendant Graña Miro Quesada and Defendant Graña Acuna, participated in the bribery and money laundering activities, found that these executives posed a flight risk, and ordered their immediate preventative detention for a period of 18 months.  ECF No. 22 at ¶ 15.  Plaintiffs allege that on February 24, 2017 the market learned that Graña was aware of the bribes and obligated to repay its proportional share to Odebrecht, a Brazilian conglomerate causing the ADS price to drop 35%.  *Id.* at ¶ 406.

The initial complaint was filed on February 27, 2017, seeking relief under of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5, promulgated thereunder.  ECF No. 1.  The initial complaint asserted claims against Graña, Monica Miloslavich Hart and Mario Alvarado Pflucker.  *Id.*  By Order dated March 5, 2018, Judge Azrack appointed Treasure Finance as Lead Plaintiff.  ECF No. 17.  A Consolidated Amended Class Action Complaint for Violations of The Federal Securities Laws ("Amended Complaint") was filed on May 29, 2018.  ECF No. 22.  The Amended Complaint added claims against Jose Graña Miro Quesada and Hernando Graña Acuna.  *Id.*

**II.   Service**

On May 2, 2017, Plaintiffs and Graña entered into a stipulation, signed by Plaintiffs' counsel, pursuant to which the counsel for the Company (Simpson Thacher) agreed to accept service on behalf of the Company.  ECF. No. 12.  On June 13, 2018, the Court issued summonses to be served on each of the Individual Defendants.  ECF Nos. 28, 29, 32, 33.  None of the Individual Defendants, all of whom are Peruvian Citizens, have been served.  Plaintiffs filed the instant motion seeking an order directing service by alternative means on July 12, 2018.  ECF No. 34.

With respect to Defendant Hart, the Company's current Chief Financial Officer, Plaintiffs requested that company counsel, Simpson Thacher, accept service on her behalf. That request was denied on April 26, 2018. Plaintiffs have not attempted to serve Defendant Hart in Peru pursuant to the Inter-American Convention on Letters Rogatory, Jan. 30, 1975, and the Additional Protocol to the Inter-American Convention on Letters Rogatory, May 8, 1979, S. Treaty Doc. No. 98-27, 53 Fed. Reg. 31,132 (1988) (the "Inter-American Convention").

Nor have Plaintiffs attempted to serve any of the remaining the Individual Defendants in Peru pursuant to the Inter-American Convention. Instead, Plaintiffs seek an order permitting service on Defendant Hart either through Simpson Thacher or the Company's registered agent for service of process, and on the remaining Individual Defendants by (i) registered and/or overnight mail at their last known addresses, and (ii) to the extent applicable, service on the attorneys representing them in related criminal matters in Peru. Pl. Mem at 3-4. Graña has filed a brief and declarations opposing Plaintiffs' motion. ECF No. 39.

In support of their motion, Plaintiffs submit the Affidavit of James Meyerdierks, the Director of Investigations of Cisive Global ("Cisive") Executive Intelligence Division, dated July 9, 2018 ("Meyerdierks Aff."). According to the Meyerdierks Affidavit, Cisive consulted with local Peruvian intelligence sources and searched local data bases and was able to identify the home addresses for Defendants Jose Graña Miro Quesada, Hernando Graña Acuna and Mario Alvarado Pflucker. Meyerdierks Aff. ¶ 5. Additionally, Cisive determined that Defendants Jose Graña Miro Quesada and Hernando Graña Acuna are involved in extensive litigation in Peru and was able to obtain the addresses used for service of process in those proceedings. *Id.* at ¶ 6.

Plaintiffs also submitted an Affidavit Regarding Service via the Inter-American Convention in Peru, signed by Diane Myers and dated June 12, 2018 ("Myers Aff."). This

affidavit sets forth the procedure for service pursuant to the Inter-American Convention. *Id.* ¶¶4-7. According to this Affidavit, service itself can take six to twelve months and several additional months are required to translate the proof of services. *Id.* ¶ 7-8.

## DISCUSSION

Plaintiffs move this Court pursuant to Rule 4(f)(3) for an order allowing Plaintiffs to make substituted service upon each of the Individual Defendants. The Company, which has been properly served in this matter, has submitted a brief in opposition to Plaintiffs' motion. The Court first addresses whether the Company has standing to oppose Plaintiffs' motion for Court-ordered service.

**I.   Standing of Graña to Oppose Plaintiffs' Motion for Court-Ordered Service**

Graña submits a Memorandum of Law in opposition to Plaintiffs' Motion for an Order Directing Service of Summons and Complaint by Alternative Means. ECF No. 39. Plaintiffs argue that the Company lacks standing to oppose the motion for alternative service because it has no stake in the outcome of the motion. ECF No. 45, Reply memorandum of law in Further Support of Plaintiffs' Motion for an Order Directing Service of Summons and Complaint by Alternative Means ("Reply Mem.") at 2. Several courts in this district have held that "[c]o-defendants do not have standing to assert improper service claims on behalf of other defendants." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, No. 07 Civ. 11028, 265 F.R.D. 106, 114 (S.D.N.Y. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties."); *S.E.C. v. Lines*, No. 07 Civ. 11387, 2009 U.S. Dist. LEXIS 69855, 2009 WL 2431976, at *2 (S.D.N.Y. Aug. 7, 2009) (holding that properly-served

defendants do not have standing to oppose substitute service on unserved defendants); *Sayles v. Pac. Eng'rs & Constructors, Ltd.*, No. 08 Civ. 676S, 2009 U.S. Dist. LEXIS 124819, 2009 WL 791332, at *5 (W.D.N.Y. Mar. 23, 2009) ("That a defendant received defective process or was insufficiently served with process cannot be asserted by codefendants")). The Court agrees with this line of cases and will not consider Graña's opposition to Plaintiffs' motion for Court-ordered service.

II.     **Service Pursuant to Rule 4(f)**

Plaintiffs seek an order pursuant to Rule 4(f)(3) directing alternative service of the Summons and Amended Complaint on the Individual Defendants, all of whom are Peruvian citizens. Rule 4(f) governs service of process on individuals in a foreign country and provides:

> Unless federal law provides otherwise, an individual -- other than a minor, an incompetent person, or a person whose waiver has been filed -- may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>     (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
>     (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
>     (C) unless prohibited by the foreign country's law, by:
>
>         (i) delivering a copy of the summons and of the complaint to the individual personally; or
>
>         (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).  Service pursuant to subsection (3) is "neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant."  *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) (quotation marks and citation omitted); *In re Heckmann Corp. Sec. Litig.*, No. 10-378-LPS-MPT, 2011 U.S. Dist. LEXIS 134402, 2011 WL 5855333 (D. Del. Nov. 22, 2011) ("Rule 4(f) does not denote any hierarchy or preference of one method of service over another.  Service under Rule 4(f)(3) is not a last resort or extraordinary relief.").

"The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court.  In exercising this discretion, district courts may impose a threshold requirement for parties to meet before seeking the court's assistance."  *Madu,* 265 F.R.D. at 116 (quotation marks and citations omitted); *see also AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913, 2015 U.S. Dist. LEXIS 70577, 2015 WL 3457452 (S.D.N.Y. June 1, 2015).  "The only limitations on Rule 4(f)(3) are that the means of service must be directed by the court and must not be prohibited by international agreement." *Ehrenfeld v. Mahfouz*, No. 04 Civ. 9641(RCC), 2005 U.S. Dist. LEXIS 4741, 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005) (citing *Rio Props.*, 284 F.3d at 1015).  *See also Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 Civ. 9258 (ALC)(MHD), 2014 U.S. Dist. LEXIS 45891 at *28 (S.D.N.Y. Mar. 31, 2014)(" The appropriate alternative service will vary depending upon the particular circumstances of the case, but is acceptable if it (1) is not prohibited by international agreement, and (2) comports with constitutional notions of due process.)(quotations omitted); *SEC v. Anticevic*, No. 05 CV 6991(KMW), 2009 U.S. Dist. LEXIS 11480, 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009) ("a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international

7

agreement, Fed. R. Civ. P. 4(f)(3); and (2) comports with constitutional notions of due process"). "[U]nder Rule 4(f)(3), a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) (internal quotation marks omitted and emphasis added). [1]

Nevertheless, before ordering alternative service under Rule 4(f)(3), some courts have required: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (citing *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262 (S.D.N.Y. 2012) (citing cases)); *Madu,* 265 F.R.D. at 115 ("district court may require the parties 'to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary'") (citations omitted). This is necessary "to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Id.* (quoting *Ryan v. Brunswick Corp*., 2002 U.S. Dist. LEXIS 13837, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002)).

---

[1] Plaintiffs correctly note that a line of cases suggesting that plaintiff must attempt service through diplomatic channels before seeking alternative service were decided with respect to service in countries governed by the Hague Convention, to which Peru is not a signatory. *See, e.g., Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Resource Ltd.,* 15-cv-1671 (JSR), 2015 U.S. Dist. LEXIS 144339, 2015 WL 6437384 (S.D.N.Y. Oct. 19, 2015) (China); I*n re Sinohub Sec. Litig.*, No. 12 Civ. 8478 (WHP), 2013 U.S. Dist. LEXIS 125465, 2013 WL 4734902, at *1 (Hong Kong); *Devi v. Rajapaska*, 11-cv-6634 (NRB), 2012 U.S. Dist. LEXIS 12382, 2012 WL 309605 (S.D.N.Y. Jan. 31, 2012) (Sri Lanka); *SEC v. Antivec,* No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480, 2009 WL 361739, at *2 (S.D.N.Y. Feb. 13, 2009) (Croatia and Germany); *Swarna v. Al-Awadi*, 06-cv-4880 (PKC), 2007 U.S. Dist. LEXIS 72661, 2007 WL 2815605 (S.D.N.Y. Sept. 20, 2007) (France); *Kuklachev v. Gelfman*, 08-cv-2214 (CPS), 2008 U.S.Dist. LEXIS 95327, 2008 WL 5068860 (E.D.N.Y. Nov. 24, 2008) (Russia); *S.E.C. v. Shehyn*, 04-cv-2003 (LAP), 2008 U.S. Dist. LEXIS 108951, 2008 WL 6150322 (S.D.N.Y. Nov. 26, 2008) (Spain). However, in certain circumstances this requirement has been relaxed even in cases under the Hague convention. *See, e.g., In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)").

Since Peru is not signatory to the Hague Convention, but both Peru and the United States are signatories to the Inter-American Convention the applicable international agreement governing service on individuals in Peru is the Inter-American Convention. "These conventions establish a method agreed upon by both countries for service of civil process within their borders. Unlike the Hague Convention, the Inter-American Convention does not purport to provide the exclusive method of effecting service between the signatories." *C & F Sys., LLC v. Limpimax, S.A.,* No. 1:09-cv-858, 2010 U.S. Dist. LEXIS 973 (W.D. Mich. Jan. 6, 2010) (citing *Kreimerman v. Casa Veerkamp S.A. de C.V.,* 22 F.3d 634, 643-44 (5th Cir. 1994)). "No other international agreement governs the service of process for litigation in the United States on parties located in Peru." *SA Luxury Expeditions, LLC v. Latin Am. for Less, LLC*, No. C 14-04085 WHA, 2015 U.S. Dist. LEXIS 109796, 2015 WL 4941792 (N.D. Cal. Aug. 19, 2015).

"Although the Inter-American Convention and the Additional Protocol provide for the service of process by way of letters rogatory, every court that has addressed the question has found that the convention and additional protocol do not preclude service by other means." *SA Luxury Expeditions,* 2015 U.S. Dist. LEXIS 109796 *4 (citing *Krierman*, 22 F.3d at 647). The Second Circuit has not addressed the scope of the Inter-American Convention or the Additional Protocol, nevertheless, other courts in this Circuit have found that alternative service of process on a party residing in Peru is not prohibited by international agreement. *See, e.g., Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 Civ. 8118 (PGG), 2018 U.S. Dist. LEXIS 163356 (S.D.N.Y. Sept. 21, 2018)("The Convention merely provides one possible method of service, however. It is neither mandatory nor exclusive."); *In re Petrobras Sec. Litig.*, 14 Civ. 9662 (BR), 2015 U.S. Dist. LEXIS 178073, 2015 WL 10846515 (S.D.N.Y. Nov. 2, 2015). Thus, the first prong of the two prong standard typically applied in this Circuit is satisfied – alternative service is not

9

prohibited by international agreement. Accordingly, the Court shall only consider whether the alternative service proposed by Plaintiffs comports with due process.

"[A]ny service ordered must . . . comport with Constitutional requirements of due process." *Halvorssen v. Simpson*, No. CV 18-2683 (JMA)(AYS), 2018 U.S. Dist. LEXIS 191371, 2018 WL 5801536 (E.D.N.Y. Nov. 5, 2018). "Constitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Anticevic*, 2009 U.S. Dist. LEXIS 11480 at *10 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

### A.     Monica Miloslavich Hart (Current Chief Financial Officer)

Plaintiffs seek permission to serve Defendant Hart either by service upon counsel of record in this case (Simpson Thacher) or service upon the Company's registered agent for service of process.

"Courts have sensibly held that service on a high-level employee's corporate employer, or counsel for that employer, is 'reasonably calculated' to apprise the employee of the pendency of the action and therefore comports with due process." *SICAV v. Wang*, 989 F. Supp. 2d at 278 (citing *GLG*, 287 F.R.D. at 267 ("[I]t is impossible to imagine that a corporation's attorney would not advise the corporation's Chairman and Chief Executive Officer of the fact that service destined for that officer had been made upon its attorney. . . . The same is true for service on [the corporation] itself: obviously a corporation will inform its own Chairman and Chief Executive Officer of a lawsuit pending against him."); *Brown v. China Integrated Energy, Inc.,* 285 F.R.D. 560, 566 (C.D. Cal. 2012) (unserved officers' and directors' "close connection" with the

corporation make it "all but certain" that directors served through counsel "will receive notice of the suit")). *See also Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) ("service on Baidu's counsel would satisfy the requirements of due process, as Baidu has actual notice of this lawsuit and there is evidence of 'adequate communication' between Baidu and counsel in any event").

"[C]ourts have permitted service on domestic counsel, even where the address of a defendant was known and/or the defendant was not trying to evade service. In those cases, courts typically focus on whether the defendant had actual notice of the law suit and concluded that such notice would satisfy any due process concerns." *Codigo Music, LLC v. Televisa, S.A. de C.V.*, NO. 15-CIV-21737, 2017 U.S. Dist. LEXIS 160747, at * (S.D. Fla. Sept. 29, 2017) (citing *Marlabs Inc. v. Jakher*, No. 07-cv-074074 (DMC)(MF), 2010 U.S. Dist. LEXIS 39557, 2010 WL 1644041, at *3 (D.N.J. Apr. 22, 2010); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2010 U.S. Dist. LEXIS 44099, 2010 WL 1337743, at *3 (N.D. Cal. Apr. 2, 2010); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005). Here, however, there is no indication that Plaintiffs have been able to ascertain the home address of Defendant Hart. According to the Meyerdierks Affidavit, Cisive only identified the home addresses for Defendants Jose Graña Miro Quesada, Hernando Graña Acuna and Mario Alvarado Pflucker. Meyerdierks Aff. ¶ 5.

Given Defendant Hart's role as Chief Financial Officer it is difficult to imagine that she is not already on notice of the claims asserted in the Amended Complaint, which relate directly to the Company's financial condition satisfying the due process requirement of notice of the pendency of the action. Accordingly, it is respectfully recommended that, pursuant to Rule

4(f)(3), Plaintiffs be ordered to serve Defendant Hart by service on Defendant Grana's counsel, Simpson Thacher.

### B. Remaining Individual Defendantsr

Plaintiffs seek permission to serve Defendants Quesada and Acuna by service upon counsel of record in a criminal matter pending in Peru and registered and/or overnight mail at their last known addresses. Plaintiffs propose service upon Defendant Mario Alvarado Pflucker by registered and/or overnight mail at his last known address. Plaintiffs acknowledge that no attempt at service has been made on any of these three defendants. As discussed above, "a party seeking leave to serve an individual by counsel must show adequate communication between the individual and the attorney." *In re GLG Tech Corp. Sec. Litig.*, 287 F.R.D. at 267; *see also Madu*, 265 F.R.D. at 116 ("District courts have not authorized service on a lawyer unless there has been adequate communication between the foreign defendant and the lawyer."). In addition, "[t]he Inter-American Service Convention does not prohibit service by international courier or Federal Express." *Fru Veg Mktg. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182 (S.D. Fla. 2012).

In *In re Petrobras Sec. Litig.*, 14 Civ. 9662 (BR), 2015 U.S. Dist. LEXIS 178073, 2015 WL 10846515 (S.D.N.Y. Nov. 2, 2015) Plaintiffs requested that the court authorize alternative service on individual defendants in Brazil through attorneys representing them in related criminal proceedings in Brazil. In that case, just as here, "Plaintiffs represent[ed] that they obtained the names of counsel for [two individual defendants] in related criminal matters by searching the dockets of Brazilian courts. They believe that these attorneys still represent the Individual Defendants and can communicate with them regarding the present lawsuit. On the basis of these representations, [the Court concluded] that attorney service will provide these two defendants

12

with adequate notice." 2015 U.S. Dist. LEXIS 178073 at * 19. *See also Lyman Morse Boatbuilding Co. v. Lee*, No. 2:10-cv-337-DBH, 2011 U.S. Dist. LEXIS 1853, 2011 WL 52509 (D. Maine Jan. 2, 2011) (ordering service on Brazilian defendant's UK counsel by certified mail); *Ehrenfeld*, 2005 WL 696769, at *3 (explaining that the defendant's "counsel in the United Kingdom [was] aware of the facts underlying th[e] suit and therefore [would] not be likely to disregard notice of the suit" because the matters were related), *but see AMTO, LLC v. Bedford Asset Mgmt., LLC*, 2015 U.S. Dist. LEXIS 70577 (refusing to authorize service on counsel in the United Kingdom because the underlying facts supporting the two cases were unrelated). Here, according to the Amended Complaint, the criminal proceedings in Peru are directly related to the alleged misstatements forming the basis of Plaintiffs' claims in this Court. However, in *Petrobras*, "plaintiffs represent that they have attempted to serve the Individual Defendants . . . through the procedures of the Inter-American Convention on Letters Rogatory (the "I-A Convention"), but that these efforts have so far been futile." 2015 U.S. Dist. LEXIS 178073 at * 17. Plaintiffs here have made no attempt to serve the Individual Defendants, other than Defendant Hart and come to the Court in the first instance.

This action has been pending for close to two years and the Individual Defendants have yet to be served. While there may be the potential for a six month to twelve month delay presented by service by letters rogatory as suggested by the Inter-American Convention, this Court finds alternative service pursuant to Rule 4(f)(3) is not warranted where Plaintiffs have failed to make any effort on their own to effectuate service. *See Halvorssen v. Simpson,* No. CV 18-2683 (JMA)(AYS), 2018 U.S. Dist. LEXIS 191371 at *14, 2018 WL 5801536 (E.D.N.Y. Nov. 5, 2018) (requiring Plaintiffs to first attempt service on their own before granting court-ordered service); *Madu,* 265 F.R.D. at 116 ("Plaintiffs have not met their threshold requirement

13

of reasonably attempting to effect service on defendants"). The Court recognizes that attempted service pursuant to the Inter-American Convention is not a requirement for court-ordered service pursuant to Rule 4(f)(3), the Court is nevertheless mindful that it is necessary for Plaintiffs to make an effort to serve the Individual Defendants absent court order "to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Id.* at 115.

Accordingly, it is respectfully recommended that Plaintiffs' motion for Court-ordered service on Defendants Quesada, Acuna and Pflucker be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
January 9, 2019

                _____/s/_____
                ARLENE R. LINDSAY
                United States Magistrate Judge