UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| In re GRAÑA Y MONTERO S.A.A. SECURITIES LITIGATION | : : : | Civil Action No. 2:17-cv-01105-LDH-ST CLASS ACTION |
| This Document Relates To: ALL ACTIONS. | : : : : : x | PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS, AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS |

**TABLE OF CONTENTS**

**Page**

I.    HISTORY OF THE LITIGATION ........................................................................3

II.   SETTLEMENT NEGOTIATIONS ....................................................................5

III.  THE SETTLEMENT TERMS............................................................................6

IV.  PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW
      PLAINTIFFS TO NOTIFY THE SETTLEMENT CLASS ................................8

      A.    Plaintiffs and Lead Counsel Have Adequately Represented the Settlement
            Class.............................................................................................................10

      B.    The Proposed Settlement Is the Result of Good-Faith, Arm's-Length
            Negotiations ................................................................................................11

      C.    The Relief Provided by the Settlement Is Adequate When Weighed
            Against the Risks of Litigation ...................................................................12

      D.    The Proposed Method for Distributing Relief Is Effective...................................13

      E.    Lead Counsel's Fee and Expense Request Is Fair and Reasonable ......................14

      F.    All Settlement Class Members Are Treated Equitably Relative to Each
            Other ...........................................................................................................15

      G.    The *Grinnell* Factors Are Also Met ...............................................................15

            1.    The Complexity, Expense, and Likely Duration of the Litigation
                  Supports Approval of the Settlement...........................................................15

            2.    The Reaction of the Settlement Class to the Settlement ............................16

            3.    The Stage of the Proceedings.....................................................................16

            4.    The Risk of Establishing Liability and Damages ......................................16

            5.    The Risks of Maintaining the Class Action Through Trial.......................16

            6.    The Ability of Defendants to Withstand a Greater Judgment....................17

            7.    The Reasonableness of the Settlement in Light of the Best Possible
                  Recovery and the Attendant Risks of Litigation........................................17

V.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
      PURPOSES IS APPROPRIATE .......................................................................18

- i -

**Page**

A. The Settlement Class Satisfies the Requirements of Rule 23(a)............................19

    1. Numerosity.................................................................................................19

    2. Commonality.............................................................................................19

    3. Typicality ..................................................................................................20

    4. Adequate Representation ..........................................................................21

B. Rule 23(b)(3) Is Satisfied .......................................................................................22

    1. Common Legal and Factual Questions Predominate.................................22

    2. A Class Action Is Superior to Other Methods of Adjudication ................23

VI. NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED .......................23

VII. PROPOSED SCHEDULE OF SETTLEMENT EVENTS .................................................24

VIII. CONCLUSION..................................................................................................................25

4838-3370-1307.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................18, 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013)..........................................................................................23

*Board of Trustees of the Operating Engineers Pension Trust*
    *v. JP Morgan Chase Bank,*
    No. 09-cv-09333-KBF, slip op. (S.D.N.Y. Nov. 20, 2013)...................................14

*Cent. States Se. & Sw. Areas Health & Welfare Fund*
    *v. Merck-Medco Managed Care, LLC,*
    504 F.3d 229 (2d Cir. 2007)..............................................................................19

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.,*
    No. 1:12-cv-01203-VEC, 2015 WL 13639234
    (S.D.N.Y. Oct. 19, 2015)...................................................................................15

*City of Providence v. Aeropostale, Inc.,*
    No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
    (S.D.N.Y. May 9, 2014), *aff'd, sub nom. Arbuthnot v. Pierson,*
    607 F. App'x 73 (2d Cir. 2015)........................................................................12

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995)................................................................................19

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)...................................................................10, 11, 17

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)....................................................................9, 10, 15, 16

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005)......................................................................16

*Hicks v. Morgan Stanley & Co.,*
    No. 01 Civ. 10071(HB), 2003 WL 21672085
    (S.D.N.Y. July 16, 2003)...................................................................................21

*In re Agent Orange Prod. Liab. Litig.,*
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd,* 818 F.2d 145 (2d Cir. 1987)....................................................................17

**Page**

*In re Am. Int'l Grp. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)........................................................................18

*In re BHP Billiton Limited Sec. Litig.*,
   No. 1:16-cv-01445-NRB, 2019 WL 1577313
   (S.D.N.Y. Apr. 10, 2019)........................................................................14

*In re Dynex Capital, Inc. Sec. Litig.*,
   No. 05 Civ. 1897(HB), 2011 WL 781215
   (S.D.N.Y. Mar. 7, 2011) ........................................................................19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)................................................................20, 21

*In re Genworth Fin., Inc. Sec. Litig.*,
   No. 1:14-cv-02392-AKH, slip op. (S.D.N.Y. Nov. 16, 2017)................14

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................10, 16, 17

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689(SAS), 2003 WL 22244676
   (S.D.N.Y. Sept. 29, 2003)........................................................................17

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................10

*In re Intercept Pharm. Inc. Sec. Litig.*,
   No. 1:14-cv-01123-NRB, 2016 WL 10519040
   (S.D.N.Y. Sept. 8, 2016)........................................................................14

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144(CM), 2009 WL 5178546
   (S.D.N.Y. Dec. 23, 2009)...................................................................20, 22

*In re PlyGem Holdings, Inc., Sec. Litig.*,
   No. 1:14-cv-03577-JPO, slip op. (S.D.N.Y. July 3, 2018) ....................14

*In re Prothena Corporation PLC Sec. Litig.*,
   No. 1:18-cv-06425-ALC, 2019 WL 6528672
   (S.D.N.Y. Dec. 4, 2019)........................................................................14

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................8, 18

- iv -

Page

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514
   (E.D.N.Y. Oct. 23, 2012) ...............................................................................17

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515(WHP), 2008 WL 5110904
   (S.D.N.Y. Nov. 20, 2008) ...............................................................................24

*Korn v. Franchard Corp.*,
   456 F.2d 1206 (2d Cir. 1972)..........................................................................19

*Mass. Bricklayers & Masons Trust Funds v. Deutsche Atl-A Sec. Litig.*,
   No. 2:08-cv-03178-LDW-ARL, 2012 WL 12552632
   (E.D.N.Y. July 11, 2012) ................................................................................14

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)..........................................................................22

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).............................................................................17

*Pantelyat v. Bank of America, N.A*,
   No. 16-cv-8964 (AJN), 2019 WL 402854
   (S.D.N.Y. Jan. 31, 2019) .............................................................................9, 12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .........................................................................................23

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ............................................................20, 21, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................8, 10, 11, 24

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78j(b).................................................................................................................3
   §78t(a).................................................................................................................3
   §78u-4 .................................................................................................................3

Code of Federal Regulations
   §240.10b-5 ..........................................................................................................3

**Page**

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................................3, 24
    Rule 23(a) ...................................................................................................18, 19, 22
    Rule 23(a)(1) ...........................................................................................................19
    Rule 23(a)(2) ....................................................................................................19, 20
    Rule 23(a)(3) ...........................................................................................................20
    Rule 23(a)(4) ...........................................................................................................21
    Rule 23(b) ...............................................................................................................18
    Rule 23(b)(3) ..........................................................................................18, 19, 22, 23
    Rule 23(e) .................................................................................................................8
    Rule 23(e)(1) ............................................................................................................8
    Rule 23(e)(2) .........................................................................................................8, 9
    Rule 23(e)(1)(B) ......................................................................................................9
    Rule 23(e)(2)(C)(i) ............................................................................................15, 16
    Rule 23(e)(2)(D) ....................................................................................................15
    Rule 23(e)(3) ............................................................................................................9

## SECONDARY AUTHORITIES

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2019 Full-Year Review* (NERA Feb. 12, 2020) ..................................................18

Lead Plaintiff Treasure Finance Holding Corp. and plaintiff Marcia Goldberg ("Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for: (i) preliminary approval of the proposed Settlement between Plaintiffs, on behalf of themselves and the proposed Settlement Class, and defendants Graña y Montero S.A.A. ("Graña" or the "Company") and Monica Miloslavich Hart ("Hart," and together with Graña, the "Served Defendants," and the Served Defendants together with Plaintiffs, the "Parties");[1] (ii) certification of the proposed Settlement Class for purposes of the Settlement;[2] (iii) approval of the form and manner of the settlement notices to Members of the Settlement Class; and (iv) the scheduling of a hearing (the "Final Approval Hearing" or "Settlement Hearing") on the final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and litigation expenses.[3]  The Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") is filed herewith.

## PRELIMINARY STATEMENT

Plaintiffs and the Served Defendants have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this Litigation for $20

---

[1]  Plaintiffs' complaint also names as defendants Mario Alvarado Pflucker ("Alvarado"), José Graña Mira Quesada ("José Graña"), and Hernando Graña Acuna ("Hernando Graña").  These individuals could not be served with process, but are parties to this Settlement.

[2]  As detailed more fully below, the "Settlement Class" consists of all persons who purchased or otherwise acquired American Depository Shares ("ADS") of Graña between July 24, 2013 and February 24, 2017, inclusive.

[3]  In light of conditions resulting from the COVID-19 pandemic, the Settlement Hearing may be conducted either by telephone or in-person, at the Court's discretion.  *See* E.D.N.Y. Administrative Order No. 2020-06 at ¶8 ("Individual judges may continue to hold hearings . . . in the exercise of their discretion, consistent with this order.  Judges are strongly encouraged to conduct court proceedings by telephone or video conferencing where practicable . . . .").  If the Settlement Hearing is held telephonically, instructions concerning how Settlement Class Members can participate by telephone will be posted on the Settlement website.

4838-3370-1307.v1

million in cash.  This resolution, which represents a substantial recovery that falls well within the range of possible approval, involved a thorough investigation, the filing of two detailed amended complaints, consultation with an expert on damages and loss causation, and a formal mediation involving rigorous and extensive negotiations.  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement ("Stipulation"), filed herewith.[4]

Plaintiffs and Lead Counsel approve of the Settlement.  Plaintiffs are investors who oversaw the Litigation and authorized the Settlement.  Lead Counsel have substantial securities litigation experience and are recognized as leaders in the field.  Based upon their experience and evaluation of the facts and the applicable law, Lead Counsel and Plaintiffs submit that the proposed Settlement is fair, reasonable and adequate, and is in the best interests of the Settlement Class.  This is especially so in light of the risk that the Settlement Class might recover substantially less (or nothing) if the action were litigated through dispositive motions, trial, and the likely post-trial motions and appeals that would follow (a process that could last several years).  Indeed, Plaintiffs face significant risks with regard to establishing liability and damages, including the risk that Defendants' motion to dismiss would be successful, the difficulty in obtaining discovery from key third parties in Peru and Brazil, the difficulty in collecting a judgment in light of Graña's poor financial condition, and the diminishing nature of Defendants' insurance policy.  Given these and other risks inherent in this complex securities class action, and the Settlement's substantial value, the Settlement represents a very good result for the Settlement Class.

At this preliminary approval stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Settlement Class should be notified of the proposed Settlement.

---

[4]   Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation.  All emphasis is added and all citations are omitted unless otherwise noted.

In light of the substantial recovery obtained, and the risks and expenses posed by protracted litigation against the Served Defendants, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order, which will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the proposed Settlement Class for purposes of the Settlement; (iii) approve the form and content of the Notice and Summary Notice attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (v) set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation or Lead Counsel's application for an award of attorneys' fees and litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## I.      HISTORY OF THE LITIGATION

The initial complaint was filed in this action on February 27, 2017, and assigned to the Honorable Joan M. Azrack, alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  ECF No. 1.  On March 23, 2017, plaintiff Marcia Goldberg filed a related action.  *See Goldberg v. Graña y Montero S.A.A.*, No. 2:17-cv-01643-JMA-ARL (E.D.N.Y.).  On March 5, 2018, the Court:  (1) consolidated the two pending and related putative class actions, (2) appointed Treasure Finance Holding Corp. as lead plaintiff, and (3)

approved Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Holzer & Holzer, LLC ("Holzer") as lead counsel.  ECF No. 16.

Following an extensive investigation, Plaintiffs filed the first Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC") on May 29, 2018.  ECF No. 22.  The FAC asserted that Defendants participated in an undisclosed scheme to bribe numerous high-ranking public officials, including at least two former Peruvian presidents, to secure lucrative public-works construction projects in Peru, which caused the Company's public statements to be false and misleading.

On July 30, 2018, Graña served its motion to dismiss the FAC, and by October 26, 2018, the motion was fully briefed. After the motion to dismiss the FAC was fully briefed, but before Judge Azrack ruled on the motion, factual developments arose that strengthened Plaintiffs' claims, and Plaintiffs brought these developments to the Court's attention.  *See* ECF Nos. 57, 60.  As a result, on March 14, 2019, Plaintiffs sought leave to amend the FAC to incorporate those facts.  ECF No. 75. On March 25, 2019, Magistrate Judge Arlene R. Lindsay granted Plaintiffs leave to file an amended complaint.  ECF No. 78.

On April 26, 2019, this case was reassigned to Judge LaShann DeArcy Hall and Magistrate Judge Steven Tiscione.  On May 10, 2019, Plaintiffs filed the Second Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC").  ECF No. 86. On June 7, 2019, Graña and Hart served separate motions to dismiss.  ECF Nos. 90-92.  On July 22, 2019, Plaintiffs served their oppositions briefs, and on August 12, 2019, Graña and Hart served their replies.  *See generally* ECF Nos. 89-98.  On August 27, 2019, Plaintiffs filed a letter requesting judicial notice of additional factual developments; the Served Defendants responded on September 4, 2019, and Plaintiffs filed a letter reply on September 13, 2019.  *See* ECF Nos. 100-102.  On

- 4 -

November 13, 2019, and January 13, 2020, Plaintiffs sent additional letters to the Court updating the ongoing bribery and corruption investigation in Peru that implicated Graña and its top executives. ECF Nos. 103, 105.  On November 20, 2019, and January 21, 2020, Graña and Hart responded to these respective letters.  ECF Nos. 104, 106.  Graña's and Hart's motions to dismiss remained pending at the time the Settlement was reached.

Plaintiffs have been required to pursue service of process on several defendants.  On July 12, 2018, Plaintiffs filed a motion for an order directing alternate service of the FAC on Hart, Alvarado, José Graña, and Hernando Graña, all of whom reside outside the United States, and the parties briefed the motion.  ECF Nos. 34-38.  On January 9, 2019, Magistrate Judge Lindsay issued a Report and Recommendation permitting Plaintiffs to serve Hart by service upon Graña's counsel, Simpson Thacher & Bartlett LLP, because Hart is currently employed by Graña.  However, Magistrate Judge Lindsay denied Plaintiffs leave to serve Alvarado, José Graña, and Hernando Graña – all of whom abruptly left Graña after disclosure of Graña's involvement in the Odebrecht bribery – through similar means.  ECF No. 62.  On March 5, 2019, Judge Azrack adopted the Report and Recommendation over Plaintiffs' timely objections. ECF No. 73.  Thereafter, Plaintiffs commenced service of process on Alvarado, José Graña, and Hernando Graña via the Inter-American Convention on Letters Rogatory.  To date, the process of serving these Defendants is ongoing and has not been completed.

## II.     SETTLEMENT NEGOTIATIONS

On November 19, 2019, Defendants Graña and Hart and Plaintiffs participated in an in-person mediation session with Gregory Lindstrom, Esq. of Phillips ADR Enterprises, an experienced mediator.  The mediation was preceded by submission of detailed mediation briefs by the mediating parties.  After extensive, hard-fought, and arm's-length negotiations, Mr. Lindstrom, based on his

- 5 -

familiarity with the law and the facts of the case, proposed that the Parties settle the Litigation for $20 million in cash.  The Parties accepted this proposal on February 10, 2020, and informed the Court on the same day that they had reached an agreement-in-principle to settle the case.  The agreement included, among other things, the Parties' agreement to settle the Litigation in return for a cash payment of $20 million for the benefit of the Settlement Class, subject to the negotiation of the terms of a Stipulation and Agreement of Settlement and approval by the Court.  The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement between the Parties.

In light of the substantial benefit to the Settlement Class, the significant costs and risks of protracted litigation – and in recognition of the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator – Plaintiffs respectfully submit that the proposed Settlement warrants preliminary approval so that notice can be provided to the Settlement Class.  Plaintiffs further submit that the Court should, preliminarily and for purposes of the Settlement only, certify the Settlement Class, appoint Plaintiffs as Class Representatives, and appoint Lead Counsel as Class Counsel.

## III.   THE SETTLEMENT TERMS

The Settlement provides that Graña and Defendants' Insurer will pay $20 million into the Escrow Account, which amount plus accrued interest comprises the Settlement Fund.  Stipulation, ¶2.2.  Notice to the Settlement Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund.  *Id.*, ¶2.11.  Plaintiffs propose a nationally recognized class action settlement administrator, Gilardi & Co. LLC. ("Gilardi"), to be retained here subject to the Court's approval.

The Notice provides that Lead Counsel will submit an application, in support of final approval of the Settlement, for an award of attorneys' fees in an amount not to exceed 25% of the

Settlement Amount and litigation expenses in an amount not to exceed $100,00 plus interest accrued on both amounts at the same rate as earned by the Settlement Fund.[5]  The Notice further explains that such fees and expenses shall be paid from the Settlement Fund.

Once Notice and Administration Expenses, Taxes, Tax Expenses, Court-approved attorneys' fees and expenses, and any award to Plaintiffs in connection with their representation of the Settlement Class have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.  Any amount remaining following the distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their Graña ADS purchases, acquisitions, and sales.  The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.

Graña and Plaintiffs have entered into a Supplemental Agreement that provides that if, prior to the Final Approval Hearing, the number of Graña ADS purchased or acquired, represented by valid claims by persons who would otherwise be Members of the Settlement Class, but who request exclusion from the Settlement Class, exceeds a certain amount, Graña shall have the option to terminate the Settlement.  Stipulation, ¶7.4.

In exchange for the benefits provided under the Stipulation, Settlement Class Members will release the "Released Claims," which include:

> [A]ny and all claims, demands, losses, rights, and causes of action of any nature whatsoever that Plaintiffs or any other Member of the Settlement Class (i) asserted in the Litigation or could have been asserted or could in the future be asserted in any

---

[5]   In accordance with the PSLRA, Lead Counsel may also apply for the reimbursement of the costs and expenses of Plaintiffs (including lost wages) directly related to their representation of the Settlement Class.

forum, whether known or unknown, whether foreign or domestic, whether arising under federal, state, common, or foreign law, whether based on statements or omissions made directly to individual persons or broadly to the market, to Plaintiffs, any Member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, regulatory, governmental, or of any other type or in any other capacity, whether brought directly or indirectly against any of the Defendants, that arise out of or are based upon or related in any way in part or in whole to any of the allegations, acts, facts, transactions, statements, events, matters, occurrences, representations or omissions involved, set forth or referred to in any complaint filed in the Litigation or in any other action that has been or may be filed by a Member of the Settlement Class arising from related facts, events, occurrences or transactions, and (ii) that relate in any way directly or indirectly in whole or in part to the purchase or acquisition of Graña y Montero ADS during the Class Period.  "Released Claims" includes "Unknown Claims" as defined in the Stipulation.

The proposed Settlement is a very good recovery on the claims asserted in this Litigation, and is in all respects fair, adequate, reasonable, and in the best interests of the Settlement Class.

## IV.   PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW PLAINTIFFS TO NOTIFY THE SETTLEMENT CLASS

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. *See* Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval.").  The approval process typically takes place in two stages.  Pursuant to recently amended Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), which governs final approval, identifies

factors that courts must consider in determining whether a class action settlement is "fair,

reasonable, and adequate," including whether:

      A.      the class representatives and class counsel have adequately represented the class;

      B.      the proposal was negotiated at arm's length;

      C.      the relief provided for the class is adequate, taking into account:

            (i)      the costs, risks, and delay of trial and appeal;

            (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

            (iii)      the terms of any proposed award of attorney's fees, including timing of payment; and

            (iv)      any agreement required to be identified under Rule 23(e)(3); and

      D.      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

      In addition, the Second Circuit considers the following factors, known as the *Grinnell* factors

(some of which overlap with Rule 23(e)(2)): "(1) the complexity, expense and likely duration of the

litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the

amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing

damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the

defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in

light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation." *Detroit v. Grinnell Corp.*, 495 F.2d

448, 463 (2d Cir. 1974); *see also Pantelyat v. Bank of America, N.A*, No. 16-cv-8964 (AJN), 2019

WL 402854, at *3-*4 (S.D.N.Y. Jan. 31, 2019). A proposed settlement is substantively fair if the totality of the nine *Grinnell* factors weigh in favor of that conclusion. *See Wal-Mart*, 396 F.3d at 117 (citing *Grinnell*, 495 F.2d at 463); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Here, Plaintiffs are requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement. As stated above, the proposed Settlement provides a Settlement Amount of $20 million in cash, a substantial recovery that is unquestionably beneficial to the Settlement Class, and plainly "'within the range of possible approval.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

### A. Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

As discussed in §V.A.4. below, Plaintiffs' interests in this case are directly aligned with those of the other Settlement Class Members. Plaintiffs have demonstrated their ability and willingness to pursue the Litigation on the Settlement Class' behalf through their involvement in the Litigation and in approving the Settlement. Plaintiffs and their counsel zealously advocated for the interests of Graña shareholders and have obtained excellent results. Plaintiffs' decision to settle this case was informed by a thorough investigation of the relevant claims; the filing of two detailed amended complaints; consultation with an expert on damages and loss causation issues; briefing motions to dismiss; tracking ongoing developments in the bribery and corruption investigation in Peru; vigorous pursuit of service of process on three of the Individual Defendants via the Inter-American Convention; and participation in extensive, hard-fought mediation. The Settlement is demonstrably

4838-3370-1307.v1

the product of well-informed negotiations and vigorous advocacy on behalf of Graña shareholders. Accordingly, this factor weighs in favor of approval.

**B.     The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations**

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *See Wal-Mart*, 396 F.3d at 116.  As described above, the Settlement was reached only after extensive, arm's-length negotiations before Mr. Lindstrom, a nationally recognized mediator experienced in securities class actions. *See, e.g.*, *D'Amato*, 236 F.3d at 85 (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  After back-and-forth negotiations, the Parties reached an agreement-in-principle to settle the Litigation.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle.  Lead Counsel conducted an extensive investigation prior to drafting and filing both the FAC and the SAC, which included, among other things, a thorough review of:  (i) Graña's public SEC filings; (ii) presentations, press releases, media and analyst reports made by or about the Company; (iii) transcripts of Graña's conference calls with analysts and investors; (iv) publicly available data relating to Graña ADS; (v) consultations with a damages and loss causation expert; (vi) review of other materials and data concerning the Company; and (vii) research of the applicable law with respect to the claims asserted in the Litigation, and the potential defenses thereto.  Plaintiffs and Lead Counsel therefore had an adequate basis for assessing the strength of the Settlement Class' claims and Defendants' defenses thereto when they agreed to the Settlement.  These circumstances confirm the presumption of fairness of the proposed Settlement.

**C.** **The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation**

In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd, sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court need only determine whether the Settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Pantelyat*, 2019 WL 402854, at *7.

If approved, the Settlement will provide Settlement Class Members with $20 million in cash, less reasonable attorneys' fees, litigation expenses, awards to the Plaintiffs' Notice and Administration Expenses, Taxes, and Tax Expenses. The amount obtained for the Settlement Class represents a very good result for the Settlement Class, particularly in light of Graña's poor and deteriorating financial condition (the Company's stock currently trades at less than $2 per ADS), the difficulty of pursing discovery in Peru, the difficulty of enforcing a foreign judgment in Peru, and the Company's diminishing insurance proceeds.

Additionally, although Plaintiffs and Lead Counsel believe their case against Defendants is strong, they acknowledge that the Served Defendants have put forth substantial arguments concerning liability, specifically arguing the Company's public statements were not false and misleading and the statements were not made with scienter. If any of these arguments were to be accepted in whole or in part, either at the motion to dismiss stage or at a later stage of the Litigation, it could eliminate or dramatically reduce any potential recovery. Further, Plaintiffs would have to prevail against Defendants at several stages:  the motion to dismiss stage, class certification,

- 12 -

summary judgment, and trial.  And even if Plaintiffs prevailed at each of those stages, they would also have to prevail on the appeals that would likely follow.  These difficulties have been compounded by Graña's and the Individual Defendants' residence in Peru.

The proposed Settlement balances the risks, costs, and delays inherent in complex securities class action cases such as this one.  When viewed in the context of these risks and the uncertainty of any later recovery from Defendants, the Settlement is extremely beneficial to the Settlement Class.

### D. The Proposed Method for Distributing Relief Is Effective

The method and effectiveness of the proposed notice and claims administration process are effective.  Specifically, this includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.  Also, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim, Preliminary Approval Order, and all briefs and declarations submitted in support of the Settlement and the requested fees and expenses.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Lead Counsel's damages consultant and is based primarily on the consultant's event-study analysis estimating the amount of alleged artificial inflation in the price of Graña ADS during the Class Period.

- 13 -

Finally, Gilardi, the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review denial of their claims, and will distribute the Net Settlement Fund pursuant to the Court-approved Plan of Allocation.  Stipulation, ¶5.7.

### E.     Lead Counsel's Fee and Expense Request Is Fair and Reasonable

As set forth in the Notice, Lead Counsel will apply for an award of attorneys' fees of up to 25% of the Settlement Amount, plus litigation expenses in an amount not to exceed $100,000 incurred in connection with the prosecution and resolution of this Litigation.  This request is reasonable and in line with, if not below, other recent fee awards in New York federal courts.  *See, e.g.*, *In re Prothena Corporation PLC Sec. Litig.*, No. 1:18-cv-06425-ALC, 2019 WL 6528672, at *1 (S.D.N.Y. Dec. 4, 2019) (awarded 30% of $15 million recovery, plus expenses); *In re BHP Billiton Limited Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019); *aff'd*, No. 19-1378-cv, Summary Order (2d Cir. Mar. 12, 2020) (awarding fees of 30% of $50 million recovery, plus expenses); *In re Genworth Fin., Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, slip op. at 2 (S.D.N.Y. Nov. 16, 2017) (ECF No. 178) (awarding 30% of $20 million recovery, plus expenses); *Board of Trustees of the Operating Engineers Pension Trust v. JP Morgan Chase Bank*, No. 09-cv-09333-KBF, slip op. at 1 (S.D.N.Y. Nov. 20, 2013) (ECF No. 159) (awarding fees of 30% of $23 million recovery, plus expenses); *In re Intercept Pharm. Inc. Sec. Litig.*, No. 1:14-cv-01123-NRB, 2016 WL 10519040, at *1 (S.D.N.Y. Sept. 8, 2016) (awarding 28.63% of $55 million recovery, plus expenses); *Mass. Bricklayers & Masons Trust Funds v. Deutsche Atl-A Sec. Litig.*, No. 2:08-cv-03178-LDW-ARL, 2012 WL 12552632, at *1 (E.D.N.Y. July 11, 2012) (awarded 26.5% of $32 million recovery, plus expenses); *In re PlyGem Holdings, Inc., Sec. Litig.*, No. 1:14-

cv-03577-JPO, slip op. at 1 (S.D.N.Y. July 3, 2018) (ECF No. 126) (awarding 25% of $25.95 million recovery, plus expenses).[6]

Further, as explained in the Notice, Plaintiffs intend to request an award for reimbursement for their time and expenses in representing the Settlement Class in an amount not to exceed $10,000 in the aggregate. *See, e.g.*, *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 19, 2015) (awarding $16,800.11 to lead plaintiff and additional named plaintiffs "to compensate them for their reasonable costs and expenses directly relating to their representation of the Class").

### F.    All Settlement Class Members Are Treated Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants.  Each Authorized Claimant, including Plaintiffs, will receive a distribution pursuant to the Plan of Allocation.  Plaintiffs, just like all other Settlement Class Members, will be subject to the same formulas for distribution of the Settlement.

### G.    The *Grinnell* Factors Are Also Met

#### 1.    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above.  In addition, this case is a testament to

---

[6]    A motion for final approval of the Settlement and for attorneys' fees and expenses will be filed 35 days before the Settlement Hearing, and Lead Counsel will request that any fees awarded be paid when the Court executes the Judgment and order awarding such fees and expenses. *See* Stipulation, ¶6.2.

the complexity and expense of securities class actions.  Plaintiffs advanced numerous complex legal and factual issues under the federal securities laws.

### 2. The Reaction of the Settlement Class to the Settlement

Plaintiffs have participated throughout the prosecution of the case and were actively involved in the decision to enter into the Settlement.  This factor is otherwise inapplicable as notice regarding the Settlement has not yet been mailed or otherwise distributed.

### 3. The Stage of the Proceedings

Plaintiffs' and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are certainly adequate to support the Settlement, as discussed above in §IV.B.  The resultant accumulation of information permitted Plaintiffs and Lead Counsel to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants.  *See Global Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

### 4. The Risk of Establishing Liability and Damages

The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  For the same reasons explained above why Plaintiffs have satisfied the Rule 23(e)(2)(C)(i) factor, Plaintiffs have satisfied the fourth *Grinnell* factor.

### 5. The Risks of Maintaining the Class Action Through Trial

Class certification motion practice had not commenced by the time of settlement.  Thus, no class had yet been certified.  In fact, even assuming class certification was achieved, the Court could have revisited certification at any time – presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("the risk that the case might be not certified is not illusory").  Thus, this factor weighs in favor of preliminary approval of the Settlement.

- 16 -

### 6.    The Ability of Defendants to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors.  *See D'Amato*, 236 F.3d at 86.  While it is unclear if in fact Defendants here could withstand a judgment in excess of $20 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and, in fact, the ability of defendants to pay more money does not render a settlement unreasonable.  *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012).

### 7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

The Settlement here represents a very good result under the circumstances – approximately 23% of reasonably recoverable damages of approximately $88 million.  Plaintiffs' percentage recovery is even higher under Defendants' view of damages.  This is exceptional, especially when

- 17 -

compared to the median percentage recovery in securities class actions in 2019 of 2.1%.  Janeen

McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year

Review* at 20, Figure 13 (NERA Feb. 12, 2020) (the median ratio of settlement to investor losses in

2019 was 2.1%, and averaged 2% in years 2010-2019).

## V.     CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Plaintiffs request that the Court certify the proposed Settlement Class for purposes of the

Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Parties have

stipulated to certification of the following proposed Settlement Class:

> [A]ll Persons who purchased or otherwise acquired Graña y Montero ADS during the
> Class Period.  Excluded from the Settlement Class are:  Defendants, members of
> their immediate families, the officers and directors and affiliates of Graña y Montero
> during the Class Period, and the legal representatives, heirs, successors or assigns of
> any of the foregoing, as well as any entity in which any Defendant or group of
> Defendants have or had during the Class Period a controlling interest.  Also excluded
> from the Settlement Class is any Person who would otherwise be a Member of the
> Settlement Class but who validly and timely requests exclusion in accordance with
> the requirements set by the Court.

The Parties further stipulate to certification of Plaintiffs as Class Representatives for the

Settlement Class, and appointment of Robbins Geller and Holzer as Class Counsel for the Settlement

Class.

Certification of a class "has been recognized throughout the country as the best, most

practical way to effectuate settlements involving large numbers of claims by relatively small

claimants."  *Prudential*, 163 F.R.D. at 205.  A class must satisfy all the requirements of Rules 23(a)

and (b), although the manageability concerns of Rule 23(b)(3) are not at issue.  *See In re Am. Int'l*

*Grp. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012); *see also Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a

consideration when settlement-only certification is requested . . . .").  The proposed Settlement Class

meets all the requirements of Rule 23(a) and Rule 23(b)(3), there is no likelihood of abuse of the class action device, and the Settlement remains subject to the Court's approval at the Settlement Hearing.

**A.    The Settlement Class Satisfies the Requirements of Rule 23(a)**

**1.    Numerosity**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit and courts within it have repeatedly held that numerosity is presumed when the proposed class would have at least 40 members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897(HB), 2011 WL 781215, at *1 (S.D.N.Y. Mar. 7, 2011).

During the Class Period, Graña had approximately 112 million shares of common stock outstanding, which traded on the New York Stock Exchange as American Depository Shares. While the exact number of Members of the Settlement Class is unknown to Plaintiffs, Plaintiffs estimate that there are thousands of investors residing in a geographically disbursed area, rendering joinder impracticable.

**2.    Commonality**

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007). Securities cases easily meet the commonality requirement, because commonality is "plainly satisfied [where] the alleged misrepresentations . . . relate to all the investors, [because] the existence and materiality of such misrepresentations obviously present important common issues." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972).

- 19 -

Here, the record reflects the existence of numerous common questions, including the following:  (1) whether Defendants violated the federal securities laws; (2) whether Defendants misrepresented or omitted material facts concerning Graña's business and financial status; (3) whether Defendants acted with scienter; (4) whether Defendants' misrepresentations and omissions caused Settlement Class Members to suffer a compensable loss; (5) whether the prices of Graña's ADS were artificially inflated; and (6) the extent of damages sustained by the Settlement Class, and the appropriate measure of those damages.

These and other common questions are sufficient to establish Rule 23(a)(2) "commonality." *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 106 (S.D.N.Y. 2011) (finding "commonality" established, explaining that "[t]he common questions presented by this case – essentially, whether the Offering Documents were false or misleading in one or more respects – are clearly susceptible to common answers").

### 3.    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  "'Typical' does not mean 'identical.'"  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).

As with commonality, typicality is plainly satisfied here.  Like the other Members of the Settlement Class, Plaintiffs allege that they purchased Graña ADS at artificially inflated prices due to Defendants' material misstatements and omissions regarding Graña's participation in a bribery and corruption scheme involving public works projects in Peru and were damaged when the truth

emerged.  Thus, the claims of Plaintiffs and of the Settlement Class Members rely on the same facts

and legal theories to establish liability.  Accordingly, the typicality requirement is met.  *See, e.g.*,

*Merrill Lynch*, 277 F.R.D. at 107.

### 4.    Adequate Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the

interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequacy 'entails inquiry as to whether:

1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's

attorneys are qualified, experienced and able to conduct the litigation.'"  *Flag Telecom*, 574 F.3d at

35.

Here, Plaintiffs' interests do not conflict with those of the Settlement Class.  Rather, given

that the Settlement Class was injured by the same materially false and misleading statements as

Plaintiffs, Plaintiffs' interests are directly aligned with the interests of the Settlement Class.  *See,*

*e.g.*, *Merrill Lynch*, 277 F.R.D. at 110 (citing *Hicks v. Morgan Stanley & Co.*, No. 01 Civ.

10071(HB), 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003)).  Plaintiffs have otherwise already

demonstrated their commitment to prosecuting this Litigation on behalf of the Settlement Class.

Plaintiffs also retained counsel who are qualified, experienced, and able to adequately conduct the

Litigation.  Lead Counsel have demonstrated that they are qualified and capable of prosecuting this

Litigation, having prosecuted many securities class actions (including within this District) for many

years with a proven track record of success.[7]  *See* websites of Robbins Geller (www.rgrdlaw.com)

and Holzer (www.holzerlaw.com).

---

[7]       *See, e.g.*, *Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 1:14-cv-07126-
JMF-OTW (S.D.N.Y. Nov. 9, 2018) (Hr'g Tr. at 27-28) ("[Robbins Geller] did an extraordinary job
here . . .  I think you have done an extraordinary job and deserve thanks and commendation for
that."); *Jones v. Pfizer Inc.*, No. 1:10-cv-03864 (S.D.N.Y. July 30, 2015) (Hr'g Tr. at 42-43)
("Without the quality and toughness that [Robbins Geller] ha[s] exhibited, our society would not be

- 21 -

Accordingly, the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are fully met in this Litigation.

## B.      Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.      Common Legal and Factual Questions Predominate

Common issues predominate where each member of a class is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct.  *See Marsh & McLennan*, 2009 WL 5178546, at \*11.  As the U.S. Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625.  Common issues also predominate "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *Marsh & McLennan*, 2009 WL 5178546, at \*11 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Here, because Settlement Class Members are subject to the same misrepresentations and omissions, and because it is alleged that Defendants' misrepresentations were part of a common course of conduct, common questions predominate.  Plaintiffs' claims and the claims of the

---

as good as it is with all it problems . . . You did a really good job.  Congratulations."); *Galestan v. OneMain Holdings, Inc. et al.*, No. 1:17-cv-01016-VM (S.D.N.Y. Aug. 9, 2019) (ECF No. 57) (Robbins Geller and Holzer served as co-lead counsel and obtained securities fraud class action settlement); *Hutchins v. NBTY, Inc. et al.*, No. 2:10-cv-02159-LDW-WDW (ECF No. 43) (E.D.N.Y. June 5, 2013) (ECF No. 43) (same); *In re Canadian Superior Sec. Litig.*, 1:09-cv-10087-SAS (S.D.N.Y. Nov. 23, 2011) (ECF No. 74) (same).

- 22 -

Settlement Class are also susceptible to common evidence and proof, because if Plaintiffs and each

Settlement Class Member brought individual actions, they would each be required to prove the same

wrongdoing by Defendants in order to establish liability.  *See Amgen Inc. v. Conn. Ret. Plans & Tr.*

*Funds*, 568 U.S. 455, 466-69 (2013); *see also Merrill Lynch*, 277 F.R.D. at 114.  Rule 23(b)(3)'s

predominance requirement is therefore satisfied.

> **2.      A Class Action Is Superior to Other Methods of Adjudication**

The class action device is the superior method for resolving the claims in this Litigation.

Courts have long recognized that the class action is not only a superior method, but also may be the

only feasible method to fairly and efficiently adjudicate a controversy involving a large number of

purchasers of securities injured by violations of the securities laws.  *See Phillips Petroleum Co. v.*

*Shutts*, 472 U.S. 797, 809 (1985) (stating that "most of the plaintiffs would have no realistic day in

court if a class action were not available").

This class action is clearly "superior to other available methods for fairly and efficiently

adjudicating" the federal securities law claims of the large number of investors at issue here.  *See*

*Merrill Lynch*, 277 F.R.D. at 120.  This is especially true in light of the fact that, without the class

device, Defendants could not obtain a class-wide release, and therefore would have had little, if any,

incentive to agree to the Stipulation.  Moreover, certification of the Settlement Class for settlement

purposes will allow the Settlement to be administered in an organized and efficient manner.

## VI.      NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the agreed-upon form of proposed Preliminary Approval Order, and described

above, Plaintiffs will notify Members of the Settlement Class by mailing the Notice and Proof of

Claim to all Members of the Settlement Class who can be identified with reasonable effort, using

multiple sources of data, including: (i) a list provided by Graña  identifying the holders of Graña

ADS during the Class Period; and (ii) a proprietary list created and maintained by the Claims Administrator of the largest and most common U.S. banks, brokers, and other nominees, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities. The Notice will advise the Settlement Class of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses.  The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for submitting valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation, objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class.

In addition to mailing the Notice and Proof of Claim, the Claims Administrator will cause publication of a Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.  In short, the Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart*, 396 F.3d at 114; *see also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VII. PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs propose the following schedule for Settlement-related events in this case:

| Event | Proposed Due Date |
|---|---|
| Deadline for commencing mailing of the Notice and Proof of Claim to the Settlement Class (which date shall be the "Notice Date") (Preliminary Approval Order, ¶10(b)) | 28 calendar days after entry of Preliminary Approval Order |

| Event | Proposed Due Date |
|---|---|
| Deadline for publishing the Summary Notice (Preliminary Approval Order, ¶10(c)) | Up to 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order, ¶20) | 35 calendar days prior to Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order, ¶¶15, 17) | 21 calendar days prior to Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order, ¶7) | 100 calendar days after the date of the Preliminary Approval Order |
| Deadline for filing reply papers (Preliminary Approval Order, ¶20) | 7 calendar days prior to Settlement Hearing |
| Deadline for submitting Proof of Claim forms (Preliminary Approval Order, ¶13) | 120 calendar days after the Notice Date |

## VIII.   CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court: (i) certify the proposed Settlement Class for purposes of the Settlement; (ii) approve the proposed form and manner of notice to be given to the Settlement Class; and (iii) schedule a hearing on Plaintiffs' motion for final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and expenses.  The Parties' agreed-upon form of proposed Preliminary Approval Order, and exhibits thereto, is filed herewith.

DATED:  July 2, 2020                     Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ALAN I. ELLMAN


                                   s/David A. Rosenfeld
                            _____
                                DAVID A. ROSENFELD

4838-3370-1307.v1

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
aellman@rgrdlaw.com

HOLZER & HOLZER, LLC
COREY D. HOLZER
MARSHALL P. DEES
1200 Ashwood Parkway, Suite 410
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com
mdees@holzerlaw.com

Lead Counsel for Plaintiffs

LAW OFFICES OF CURTIS V. TRINKO, LLP
CURTIS V. TRINKO
39 Sintsink Drive West, 1st Floor
Port Washington, NY  11050
Telephone:  516/883-1437
ctrinko@trinko.com

Additional Counsel for Plaintiffs

4838-3370-1307.v1

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on July 2, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

s/ David A. Rosenfeld
DAVID A. ROSENFELD