**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

In re GRAÑA Y MONTERO S.A.A. SECURITIES
LITIGATION

                                                                    **REPORT AND**
                                                                    **RECOMMENDATION**
----------------------------------------------------------    17-CV-01105 (LDH) (ST)

This document relates to:
ALL ACTIONS
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

This is the consolidation of two actions seeking relief under the Securities Exchange Act

of 1934 (the "Exchange Act") on behalf of all purchasers of Graña y Montero S.A.A. ("Graña

or the "Company") American Depository Shares ("ADSs") from July 24, 2013 through February

24, 2017. *See* 2d Consolidated Am. Compl., ECF No. 86; *see also* Order, No. 17-cv-1105

(E.D.N.Y. Mar. 5, 2018), ECF No. 16,17.  On August 18, 2020, the District Court granted the

parties' motion for preliminary approval of the proposed settlement. *See* Order, No. 17-cv-1105

(E.D.N.Y. Aug. 18, 2020).  On October 27, 2020, the parties filed this motion for final approval

of the proposed settlement and its related facets. *See* Mot. for Final Settlement Approval ("Final

Approval"), ECF No. 118.  The Honorable LaShann DeArcy Hall referred this motion to me for

a Report and Recommendation. *See* Order, No. 17-cv-1105 (E.D.N.Y. Nov. 2, 2020).  For the

reasons stated below, the undersigned recommends that the Motion for Final Settlement

Approval and related relief be GRANTED.

## BACKGROUND

Lead Plaintiff Treasure Finance Holding Corp. ("Treasure Finance") and Plaintiff Marcia

Goldberg ("Goldberg") (collectively "Plaintiffs"), brought this securities class action on behalf

- 1 -

of all those who purchased American Depository Shares[1] ("ADSs") of Graña y Montero S.A.A. ("Graña") from July 24, 2013 through February 24, 2017 (the "Class Period"), against Graña, Mario Alvarado Pflucker ("Alvarado"), Monica Miloslavich Hart ("Hart"), José Graña Miró Quesada ("José Graña"), and Hernando Graña Acuña ("Hernando Graña") (collectively, "Individual Defendants") for alleged violations Securities Exchange Act of 1934 (the "Exchange Act"). *See* 2d Am. Compl. at 1, ECF No 86.

The Individual Defendants were senior executive officers of Graña during the Class Period. *Id* ¶ 27-30. Alvarado served as Graña's Chief Executive Officer and a member of its Board of Directors until March 2, 2017. *Id.* ¶ 27. Hart served as Graña's Chief Financial Officer. *Id.* ¶ 28. José Graña is a former member of Graña's Board of Directors, and from 1996 until February 27, 2017, served at its Chairman. *Id.* ¶ 29. Defendant Hernando Graña is a former member of Graña's Board of Directors and also served as the Chairman of the Board of Directors of various Graña subsidiaries, including the Company's oldest and most profitable construction subsidiary, GyM S.A. ("GyM"). *Id.* ¶ 30.

I.    Factual Background

Graña is a Paruvian holding corporation who's ADSs have traded on the New York Stock Exchange ("NYSE") since July 24, 2013. *See id.* ¶ 1-2. Graña, through its subsidiaries, provides various professional services to major infrastructure and energy projects in Latin America. *See*

---

[1] "American depository receipts (ADRs) or American Depository Shares (ADSs) are U.S. securities that correspond to a foreign security. The foreign security is technically owned by the depositary bank." American Depository Shares, 2 Litigation of International Disputes in U.S. Courts § 8:38; *see, e.g., Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 251 (2010) ("…National … was … the largest bank in Australia. Its Ordinary Shares—what in America would be called "common stock"—are traded on the Australian Stock Exchange Limited and on other foreign securities exchanges, but not on any exchange in the United States. There are listed on the New York Stock Exchange, however, National's American Depositary Receipts (ADRs), which represent the right to receive a specified number of National's Ordinary Shares.").

*id.* ¶ 2, 26.  Between 2005 and 2011, Graña participated in multiple consortia led by Odebrecht S.A. ("Odebrecht"), a global construction conglomerate based in Brazil. *Id.* ¶ 3.  The consortia entered into concession agreements[2] for high value public works projects in South America. *Id.*

Throughout the Class Period, Graña portrayed its success at winning these governmental contracts as legitimate; the direct result of a competitive bidding process in which their reputation as an industry leader, and importantly that of Odebrecht, was an indispensable part. *Id.* ¶ 4.  Graña's success in obtaining these lucrative projects through its consortium with Odebrecht generated approximately $475 million in gross proceeds through the initial public offering ("IPO") of Graña's ADSs, reaching a Class Period high of $22 per ADS by September 19, 2013. *Id.* ¶ 6.

Plaintiffs allege that Graña, along with Odebrecht and others, obtained the lucrative government projects through bribery and fraud, which it purposefully concealed in order to artificially inflate the value of its ADSs. *Id.* ¶ 5-6.  Specifically, they allege that from 2005 to 2015, Graña contributed to Odebrecht's payment in the millions of dollars to Peruvian public officials to ensure their award of several major infrastructure projects, which then raised the price of their ADSs. Decl. of David A. Rosenfeld and Corey D. Holzer ("Pls.' Att'y Decl.") ¶ 17, ECF No 118-3 (internal citations omitted).  This included: $13.5 million paid to then Peruvian President Alan García and other high-ranking Transportation Ministry officials, to ensure that they won the contract for the Lima Metro project (*id*. ¶ 18, ECF No 118-3 (internal citations

---

[2] "A concession agreement is an agreement between a government and a private company (the "concessionaire"), in which the government transfers to the company the right to maintain, produce, or provide a good or service within the country for a limited period of time, but the government retains ultimate ownership of the right." Nicholas Miranda, *Concession Agreements: From Private Contract to Public Policy*, 117 Yale L.J. 510, 512 (2007) (citing Org. for Econ. Co-operation & Dev., Policy Brief: Competition Policy and Concessions 1 (2007), available at http://www.oecd.org/dataoecd/12/47/38706036.pdf).

omitted)); $750,000 paid to an unnamed Peruvian official, and two payments of $31 million and $4.3 million to then Peruvian President Alejandro Toledo, related to the contract for the IIRSA[3] South project (*id*. ¶ 18 (internal citations omitted)); and, as a member of a construction cartel named the Construction Club, 2.92% of the total value of each highway maintenance and rehabilitation contract, paid to Peru's Vice Minister of Transportation and a conspiring lobbyist (*Id.* ¶ 20 (internal citations omitted)).

In March of 2016, Odebrecht's bribery scheme, along with Graña's participation therein, began to be revealed. *Id.* ¶ 21. Odebrecht, in response to their status as the subject of separate bribery and corruption probes, ceded management of the Southern Gas Pipeline to its consortium partners, which included Graña. Pls.' Att'y Decl. ¶ 21, ECF No 118-3; 2d Am. Compl. ¶ 7, ECF No 86. Further, it was reported by various new outlets that Odebrecht was considering selling its controlling interest in Braskem S.A. ("Braskem"), a Brazilian petrochemical company. *Id.*

On December 21, 2016, the U.S. Department of Justice announced that Odebrecht had pled guilty to violating the anti-bribery provisions of the Foreign Corrupt Practices Act ("FCPA"). Pls.' Att'y Decl. ¶ 22, ECF No 118-3. In relevant part, Odebrecht confessed to paying at least $29 million in bribes to public officials to secure two major infrastructure projects in Peru in 2005 and 2008, i.e., the IIRSA South and Lima Metro projects, thus indirectly implicating Graña in the bribery. *Id.* Graña, in conference calls, public interviews, and in their Securities and Exchange Commission ("SEC") filings, denied any wrongdoing. *Id.* Nonetheless,

---

[3] "The Initiative for the Integration of Regional Infrastructure in South America (IIRSA) is an institutional mechanism aimed at coordinating intergovernmental actions adopted by the twelve South American countries with a view to building a common agenda to foster projects for the integration of transport, energy, and communications infrastructure." Union of South American Nations (UNASUR), *IIRSA 2000-2010*, The South American Council of Infrastructure and Planning (COSIPLAN), https://iirsa.org/en/Page/Detail?menuItemId=28.

the price of Graña ADS's fell from $7.75 on December 21, 2016, to $5.02 on January 11, 2017, to $4.41 on January 12, 2017. 2d Am. Compl. ¶ 8, 10, ECF No 86.

On February 24, 2017, a Peruvian news magazine reported that Graña knew about a $20 million payment made by Odebrecht in order to win the IIRSA South contract. *Id.* ¶ 23. That same day, despite Graña's continued denials, the value of Graña ADSs fell approximately 35%. Pls.' Att'y Decl. ¶ 23, ECF No 118-3; *see* 2d Am. Compl. ¶ 14, ECF No 86. Plaintiffs allege that Hart and Alvarado certified that the Company's financial results were accurate and that there were no known material weaknesses in internal controls, despite being aware of numerous warning signs regarding Odebrecht's illicit activities. 2d Am. Compl. ¶ 256, ECF No 86.

On February 27, 2017, Alvarado, José Graña, and Hernando Graña all resigned from their respective leadership positions, leading to an even greater decline in the price of Graña ADSs. *Id.* (citing 2d Am. Compl. ¶ 537-546, ECF No 86). Later that year, on December 4, 2017, José Graña and Hernando Graña were criminally charged in a Peruvian court for their participation in the bribery schemes. 2d Am. Compl. ¶ 232-233, 238-239, ECF No 86. Eventually, to aid in their goal of becoming effective collaborators[4], both admitted their respective culpability. Pls.' Att'y Decl. ¶ 24-26, ECF No 118-3.

## II.     Procedural Background

On February 27, 2017, Plaintiff Jose Manuel Valencia Peralta ("Peralta") filed the initial complaint ("Peralta Compl.," ECF No. 1) against Graña, Alvarado, and Hart, alleging violations

---

[4] In relevant part, the United Nations Convention against Transnational Organized Crime, 2225 U.N.T.S. 209 (2000) ("CATOC"), requires that signatories "should establish mechanisms for person involved in organized crime to provide useful and relevant information" in order to specifically combat money laundering and corruption. 2d Am. Compl. ¶ 199-201, ECF No 86. Accordingly, Peru has codified a "special process that allows the prosecution to obtain inside information from individuals involved in organized cross-border criminal activity in exchange for leniency … [t]hese individuals are known as 'effective collaborators.'" *Id.* ¶ 202.

of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)), and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5), and published notice of the same[5] (*see* Decl. of David A. Rosenfeld in Supp. Of Mot. for Consolidation, Ex. A ("Peralta Notice"), ECF No. 9-1).  The following month, on March 23, 2017, Goldberg filed a related class action complaint ("Goldberg Compl.") alleging the same violations. Goldberg Compl., No. 17-cv-1643-JMA-ARL (E.D.N.Y. Mar. 23, 2017), ECF No. 1. On April 28, 2017, Treasure Finance filed a timely motion for, *inter alia,* appointment as Lead Plaintiff. Pls.' Att'y Decl. ¶ 29, ECF No 118-3; *see* Treasure Finance's Mot. for Appointment, ECF No. 7.  On March 5, 2018, the District Court issued an order appointing Treasure Finance as Lead Plaintiff, appointing Robbins Geller Rudman & Dowd, LLP ("Robbins Geller") and Holzer & Holzer, LLC ("Holzer") as Lead Counsel, and consolidating the two related cases. Order, No. 17-cv-1105 (E.D.N.Y. Mar. 5, 2018), ECF No. 16,17.

On May 29, 2018, Plaintiff's filed a consolidated amended class action complaint ("Amended Complaint"), adding José Graña, and Hernando Graña as individual defendants. *See* Am. Compl., ECF No. 22; *see* José Graña Proposed Summons, ECF No. 28; *see* Hernando Graña Proposed Summons, ECF No. 29.  Thereafter, on July 12, 2018, Plaintiffs moved for an order pursuant to Federal Rule of Civil Procedure 4(f)(3) directing service of process by alternate means on the Individual Defendants, who are all Peruvian citizens. Pls.' 1st Mot. to Compel, ECF No. 34.  Specifically, Plaintiffs asked the Court for an order: (1) permitting service on Hart

---

[5] The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that the plaintiff in a private securities class action "cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class … of the pendency of the action, the claims asserted therein, and the purported class period" within 20 days of filing the complaint. 15 U.S.C.A. § 77z-1(a)(3).  Additionally required in the notice is the information "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.*

through either Graña's counsel Simpson Thatcher & Bartlett LLP, or Graña's registered agent for service of process; and, (2) permitting service on the remaining Individual Defendants by either registered and/or overnight mail to their last known addresses, or, to the extent applicable, service on the attorneys representing them in related criminal matters in Peru. *See id.*  Graña's opposed the motion to compel (Defs.' Mem. in Op. to Pls.' 1st Mot. to Compel, ECF No. 39), and, thereafter, moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b). (*see* Defs' Mot. to Dismiss Am. Compl., ECF No. 50)[6].

On January 9, 2019, the Honorable Arlene R. Lindsay issued a Report and Recommendation which recommended that Plaintiff's first motion to compel be granted in part and denied in part. R. & R., No. 17-cv-1105 (E.D.N.Y. Dec. 4, 2018).  Judge Lindsay explained that while service on Hart via Graña's counsel should be allowed, as she was still serving as CFO at the time and therefore likely already aware of the pendency of the action, the other Individual Defendants had no such benefit and Plaintiffs had seemingly not made any attempt to serve them through traditional means[7]. *See id.*

_____

[6] On July 30, 2018, Defendants served their Motion to Dismiss upon Plaintiffs. *See* Defs' Mot. to Dismiss Am. Compl. at 1, ECF No. 50; *see* Pls.' Att'y Decl. ¶ 36, ECF No 118-3. However, pursuant to Judge Azrack's Individual Rules, the motion was not filed until October 26, 2018 when it was fully briefed. Pls.' Att'y Decl. at 14 n.6, ECF No 118-3.

[7] Federal Rule of Civil Procedure 4(f) governs the service of process on an individual in a foreign country. Fed. R. Civ. P. 4(f).  Such a person may be served by "any internationally agreed means of service that is reasonably calculated to give notice…." *Id.*  In this case, the governing international agreement is the Inter-American Convention on Letters Rogatory, Jan. 30, 1975, and Additional Protocol, May 8, 1079, S. Treaty Doc No. 98-27, 53 Fed. Reg. 31, 132 (1988) (collectively "IACAP").  Traditionally, international service of process is completed through letters rogatory, or "a formal request from a court in which an action is pending, to a foreign court to perform some judicial act." Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 841 F. Supp. 2d 769, 775 (S.D.N.Y. 2012) (quoting 22 C.F.R. § 92.54).  According to the U.S. Department of State, the IACAP replaced the traditional letters rogatory process by creating a mechanism for service whereby the U.S. Department of Justice, serving as the U.S. Central Authority, transmits documents to a foreign central authority for service in that country. U.S. Dep't of State, Bureau of Consular Affairs, Inter-American Service Convention and Additional

On March 5, 2019, over Plaintiffs' objection, the Honorable Joan M. Azrack issued an Order adopting the Report and Recommendation in its entirety. Order, No. 17-cv-1105 (E.D.N.Y. Mar. 5, 2019). Plaintiffs were thus permitted to effectuate service upon Hart by alternative means but prohibited from doing the same upon the remaining three Individual Defendants. *Id.* Soon thereafter, Plaintiffs commenced the process to serve Alvarado, José Graña, and Hernando Graña via Letters Rogatory pursuant to the IACAP. Pls.' Att'y Decl. ¶ 46, ECF No 118-3; *see* Hernando Graña Letters Rogatory, ECF No. 82; *see* Alvarado Letters Rogatory, ECF No. 83, *see* José Graña Letters Rogatory, ECF No. 84. Notably, as of the filing date of the instant motion, Alvarado, José Graña, and Hernando Graña still have not been served. *See* Pls.' Att'y Decl. at 2 n.2, ECF No 118-3.

On March 14, 2019, Plaintiffs filed a motion to amend the Amended Complaint to supplement their allegations with additional facts revealed by the parallel criminal investigations in Brazil and Peru of Odebrecht and Graña. Pls.' Mot. to Amend Am. Compl., ECF No. 75. The motion was unopposed by Defendants (Defs.' Letter re: Pls.' Mot. to Amend Am. Compl., ECF No. 77), and granted by Judge Lindsay (Order, No. 17-cv-1105 (E.D.N.Y. Mar. 25, 2019)). Accordingly, Plaintiffs filed the Second Amended Complaint on May 10, 2019 (s*ee* 2d Am. Compl., ECF No. 86), and Defendants' motion to dismiss the Amended Complaint was denied as moot ((Order, No. 17-cv-1105 (E.D.N.Y. June 6, 2019)). Defendant filed a Motion to Dismiss the Second Amended Complaint on August 12, 2019. Mot. to Dismiss 2d Am. Compl., ECF No. 93.

---

Protocol, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process/Inter-American-Service-Convention-Additional-Protocol.html (last visited June 14, 2021).

On February 10, 2020, after a series of status reports, letters, responses, and replies, (*see generally* Letter Mot., ECF No. 99-106) and participating in negotiations overseen by a mediator, the parties filed a motion requesting that the Court stay the action in anticipation of a settlement agreement. Mot. to Stay, ECF No. 107; *see also* Mot. for Final Settlement Approval ("Final Approval"), ECF No. 118.  On July 2, 2020, the parties filed a motion for preliminary approval (*see* Mot. for Settlement for Prelim. Approval ("Prelim. Approval"), ECF No. 112) of the proposed settlement agreement (Stipulation and Agreement of Settlement ("Settlement"), ECF No. 112-2) which was thereafter granted by the Honorable LaShann DeArcy Hall on August 18, 2020. Order, 17-cv-1105 (E.D.N.Y. Aug. 18, 2020).

Pursuant to the Preliminary Approval Order, more than 13,600 copies of the Notice and Proof of Claim were mailed to potential Settlement Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*. *See* Declaration of Ross D. Murray ("Murray Decl."), ¶¶11-12, ECF No. 118-5; *see* Mem. of Law at 11, ECF No. 118-1.  Additionally, a settlement-specific website was created where key Settlement documents were posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. Murray Decl. ¶14, ECF No. 118-5.  Settlement Class Members had until November 10, 2020 to object to the Settlement or request exclusion from the Settlement Class. Mem. of Law at 11, ECF No. 118-1.

On October 27, 2020, the parties filed this motion for final approval of the proposed settlement agreement and its related facets. *See* Final Approval, ECF No. 118.  On November 2, 2020, the Judge DeArcy Hall referred this motion to this Court for a Report and Recommendation. *See* Order, No. 17-cv-1105 (E.D.N.Y. Nov. 2, 2020).  A final fairness hearing was held on December 21, 2020. *See* Min. Order, No. 17-cv-1105 (E.D.N.Y. January 4, 2021),

ECF No. 122.  Threat, the Court heard oral argument on the overall fairness of the proposed

settlement agreement, and reserved decision on the parties' motion for final approval of the

settlement to consider the issues discussed at the hearing. *Id*.  As of the final fairness hearing,

there have been no objections to the Settlement, and no requests for exclusion. *See* Mem. of Law

at 11, ECF No. 118-1.

Since the final fairness hearing, Graña filed an amended corporate disclosure statement

pursuant to Federal Rule of Procedure 7.1 providing notice that Graña is now known as Aenza

S.A.A.[8] *See* Defs' Notice of Name Change, ECF No. 121.  Additionally, on July 14, 2021, the

parties filed their First Amendment to the Stipulation and Agreement of Settlement, which

revised the timing and related terms of Graña's payment to Plaintiffs and the Settlement Class.

*See* 1st Am. to Settlement, ECF No. 124-1.

III.    The Settlement Agreement

The proposed Settlement Agreement defines the Settlement Class as:

[A]ll Persons who purchased or otherwise acquired Graña y Montero ADS during
the Class Period [July 24, 2017 through February 24, 2017].  Excluded from the
Settlement Class are: Defendants, members of their immediate families, the
officers and directors and affiliates of Graña y Montero during the Class Period,
and the legal representatives, heirs, successors or assigns of any of the foregoing,
as well as any entity in which any Defendant or group of Defendants have or had
during the Class Period a controlling interest.  Also excluded from the Settlement
Class is any Person who would otherwise be a Member of the Settlement Class
but who validly and timely requests exclusion in accordance with the
requirements set by the Court.

Settlement at 11, ECF No. 112-2.  Members of the Settlement Class will be entitled to a share of

the Net Settlement Fund, that is $20,000,000 paid by Graña, less: "(i) any Court-awarded

attorneys' fees, expenses, and interest thereon; (ii) Notice and Administration Expenses; (iii)

---

[8] For simplicity's sake, the Court will eschew "Aenza" in favor of "Graña" throughout this
report and recommendation.

Taxes and Tax Expenses; and (iv) other Court-approved deductions." *Id.* ¶ 1.15.  Each

Settlement Class members' share will be determined by the overall net loss on all of their

transactions with Graña during the Class Period, as compared to the total value of ADSs

represented by valid Proof of Claim forms sent in by all Class Members. Murry Decl., Ex. A,

ECF No. 118-5.  Graña and Hart, as the only served Defendants, also release any claims against

the Plaintiffs, Plaintiffs' Counsel, and any member of the Settlement Class. *Id.* ¶ 1.25.

 In exchange for their share of the Net Settlement Fund, members of the Settlement Class

release:

> any and all claims, demands, losses, rights, and causes of action of any nature
> whatsoever that Plaintiffs or any other Member of the Settlement Class (i)
> asserted in the Litigation or could have been asserted or could in the future be
> asserted in any forum, whether known or unknown, whether foreign or domestic,
> whether arising under federal, state, common, or foreign law, whether based on
> statements or omissions made directly to individual persons or broadly to the
> market, to Plaintiffs, any Member of the Settlement Class, or their successors,
> assigns, executors, administrators, representatives, attorneys, and agents, in their
> capacities as such, whether individual, class, direct, derivative, representative, on
> behalf of others, legal, equitable, regulatory, governmental, or of any other type or
> in any other capacity, whether brought directly or indirectly against any of the
> Defendants, that arise out of or are based upon or related in any way in part or in
> whole to any of the allegations, acts, facts, transactions, statements, events,
> matters, occurrences, representations or omissions involved, set forth or referred
> to in any complaint filed in the Litigation or in any other action that has been or
> may be filed by a Member of the Settlement Class arising from related facts,
> events, occurrences or transactions, and (ii) that relate in any way directly or
> indirectly in whole or in part to the purchase or acquisition of Graña y Montero
> ADS during the Class Period…."

*Id.* ¶ 1.24.  This includes any claims that were unknown at the time of settlement by either party

and may have affected their decision on whether to settle. *See id.* ¶ 1.36.

 Pursuant to the First Amendment to the Settlement, "[Graña] shall cause to be

deposited $550,000 into an escrow account by July 14, 2021, with the remaining

$14,100,000 being deposited by September 30, 2021, plus interest paid by Graña of five

percent per annum on $14,650,000 from September 17, 2020 through June 30, 2021, and thereafter with interest accruing at eight percent per annum on the unpaid balance." 1st Am. to Settlement at 2, ECF No. 124-1.

In addition to the Settlement Class payments, the Settlement also contemplates an award of Plaintiffs' counsel fees in the amount of 25% of the Settlement Fund and $54,774.05 in expenses, and an award of $4,000 to Goldberg in connection with her representation of the Settlement Class. *See* Pl.'s Mem. of Law. in Supp. of Atty's Fees and Expenses ("Attys' Fees") at 1-2, ECF No. 118-2; *see* Settlement ¶ 2.5, 6.1-6.2, ECF No. 112-2.

## LEGAL STANDARD

In the Second Circuit, "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks omitted)). "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Id*. Rule 23(e) provides that "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Court approval of a class action settlement must be premised on a hearing and subsequent finding that the settlement is "fair, reasonable, and adequate" and not the product of collusion or some other malfeasance. See F.R.C.P. 23(e)(3); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).

Before approving a class action settlement, the district court must conclude that the proposed class meets the requirements for class certification set forth in Rule 23(a) and the relevant subsection of Rule 23(b). *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012). The court, "[c]onfronted with a request for settlement-only class certification . . . need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "At the same time, however . . . other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention." *Id*. (quoting *Amchem*, 521 U.S. at 620) (internal quotation marks omitted). "Thus, in the context of settlement, Rules 23(a) and (b) continue to serve the purpose of 'focus[ing] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.*.

The determination of whether the class should be certified and the terms of the proposed settlement are "fair, reasonable, and adequate" rests in the discretion of the district court. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 273 (2d Cir. 2006); *see* Fed. R. Civ. P. 23(e)(2). In exercising its discretion, the district court must engage in careful balancing but "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As such, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [the Second Circuit] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Grinnell*, 495 F.2d at 456. "Defendants in class action suits are entitled to settle claims pending against them on a class-

wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e)." *AIG*, 689 F.3d at 243–44; *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310 (3d Cir. 2011) (en banc) ("[W]ere we to mandate that a class include only those alleging 'colorable' claims, we would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not. We need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action.").

"Courts tasked with approving a settlement consider its procedural and substantive fairness; they ask whether the terms of the settlement and the negotiation process leading up to it are fair." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (citing *In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 575 (S.D.N.Y. 2008) (internal quotation marks omitted)). When a settlement is the product of "arms-length negotiations between experienced, capable counsel after meaningful discovery," it is afforded a "presumption of fairness, adequacy, and reasonableness." Wal-Mart, 396 F.3d at 116.  Additionally, when considering the benefits achieved by a settlement, courts must keep in mind that "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

**DISCUSSION**

I.     Class Certification

The District Court preliminarily certified the class for purposes of settlement, finding that

the prerequisites for a class action under Rules 23(a) and (b)(3) had been satisfied. Order, 17-cv-

1105 (E.D.N.Y. Aug. 18, 2020).  The same reasoning persists in this final stage of approval.

A.  Rule 23(a)

Rule 23(a) imposes four threshold requirements for certification of a class action:

(1) numerosity ("the class is so numerous that joinder of all members is impracticable"),

(2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the

claims or defenses of the representative parties are typical of the claims or defenses of the

class"), and (4) adequacy of representation ("the representative parties will fairly and adequately

protect the interests of the class"). Fed. R. Civ. P. 23(a).

1.  *Numerosity*

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of

Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  "The movant need not provide a precise

quantification of their class, since a court may make common sense assumptions to support a

finding of numerosity … [n]evertheless, the movant must show some evidence of or reasonably

estimate the number of class members." *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119

(E.D.N.Y. 2015) (internal quotation marks and citation omitted).  During the Class Period, Graña

had approximately 112 million shares of common stock outstanding, which traded on the New

York Stock Exchange as ADSs. Mem. of Law in Supp. of Mot. for Prelim. Approval ("Mem. of

Law") at 19, ECF No. 112-1.  Accordingly, numerosity is satisfied. *See In re Frontier Ins. Grp.,

Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (quoting *Garfinkel v. Memory Metals, Inc.*,

695 F.Supp. 1397, 1401 (D.Conn.1988) ("In securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period").

### 2-3.  *Commonality and Typicality*

The commonality and typicality requirements are also met.  The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 n.5 (2011); *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997).

A class may only be certified if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality demands that the class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims m one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).  What matters is "'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L. Rev. 97, 132 (2009)).  "'[F]actual differences in the claims of the class do not preclude a finding of commonality.'" *Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 73 (S.D.N.Y. 2006) (quoting 5 *Moore's Federal Practice* § 23.23).  Commonality may be found were the plaintiffs' alleged injuries "derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of [those] of the class." Fed. R. Civ. P. 23(a)(3).  The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes

similar legal arguments to prove the defendant's liability." *Marisol A.,* 126 F.3d at 376. "[M]inor variations in the fact patterns underlying [the] individual claims" do not preclude a finding of typicality. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, the common questions of law and fact in this case all relate to whether Defendants misrepresented or omitted material facts concerning Graña's business and financial status and in turn whether that conduct caused members of the Settlement Class to suffer a compensable loss. *See* Mem. of Law at 19-20, ECF No. 112-1. This is sufficient to satisfy the commonality and typicality requirements. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409-10 (S.D.N.Y. 2015); *see Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233 (E.D.N.Y. 2014).

### 4. *Adequacy of Representation*

In order to show adequate representation of the class's interests, Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and, (2) class counsel is qualified, experienced and generally able to conduct the litigation. *Marisol A.*, 126 F.3d at 378.

To satisfy the first prong, courts in this Circuit have required plaintiffs to show that "no fundamental conflicts exist" between the class's representatives and its members. *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) (citing *In re Literary Works*, 654 F.3d at 249). Here, Plaintiff's interests are directly aligned with the interests of the Settlement Class as all involved purchased Graña's ADSs during the Class Period and allegedly suffered harm as a result of Defendants' alleged misdeeds. *See* Mem. of Law at 6, ECF No. 118-1. Moreover, the record reflects that class counsel is experienced in class action litigation and has brought that experience to bear in this case, where they conducted extensive investigations, including in Spanish and Portuguese, and engaged in two rounds of briefing to oppose Defendant's motions to dismiss.

*See id.*; *see also* Decl. of David A. Rosenfeld ("Rosenfeld Decl."), ECF No. 118-6; *see also* Decl. of Corey D. Holzer ("Holzer Decl."), ECF No. 118-7; *see also* Decl. of Curtis V. Trinko ("Trinko Decl.'), ECF No. 118-8.

  B.  <u>Rule 23(b)(3)</u>

  "In addition to satisfying the Rule 23(a) requirements, certification must be appropriate under Rule 23(b)." *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17-CV-02738-MKB-JO, 2021 WL 234550, at *20 (E.D.N.Y. Jan. 19, 2021) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013)). "Certification under Rule 23(b)(3) requires both that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, [predominance] and that (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]. *B & R Supermarket, Inc.*, 2021 WL 234550, at *20 (citing Fed. R. Civ. P. 23(b)(3)) (internal quotation marks omitted).

  "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Tesla, Inc.*, No. 20-CV-3040-NGG-SJB, 2021 WL 3160795, at *10 (E.D.N.Y. July 26, 2021) (citing *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Wang,* 2021 WL 3160795, at *10 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)) (internal quotation marks omitted). Plaintiffs need not prove, however, that the legal or factual issues that predominate will be answered in their favor. *See, e.g., Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).  Here, as

already discussed, the Plaintiffs and Settlement Class members suffered the same harm, albeit to different degrees, because of the same alleged malfeasance by Defendants. *See* Mem. of Law at 6, ECF No. 118-1; *see Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws").

"To satisfy the superiority requirement, the moving party must show that the class action presents economies of 'time, effort and expense, and promote[s] uniformity of decision.'" In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 130 (2d Cir. 2013). The superiority requirement is designed to avoid "repetitious litigation and possibility of inconsistent adjudications." *B & R Supermarket, Inc.,* 2021 WL 234550, at *33 (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 JG VVP, 2014 WL 7882100, at *64 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, No. 06-MD-1775 JG VVP, 2015 WL 5093503 (E.D.N.Y. July 10, 2015)).  In this case, the similarity of the class members' claims, the complexity of maintaining an action against international actors, and the fact the economies of scale that would be produced by litigating the claims in the aggregate, all support a finding of superiority. *See In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2020 WL 4694172, at *7 (S.D.N.Y. Aug. 13, 2020) (citing *Public Emps.' Ret. Sys. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011) (finding superiority where "there is no overwhelming interest by class members to proceed individually" and where "only two investors" of more than 1,600 were independently pursuing claims); *see also* Amchem Prods., Inc., 521 U.S. at 617 (The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (1997)).

Therefore, in light of the foregoing, this Court respectfully recommends that the

Settlement Class should be certified for the purpose of settlement.

II.    Settlement Approval

A district court's approval of a settlement is contingent on its finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "Where, as here, the parties have negotiated a settlement before asking the court to certify a class, their proposal is subject to a higher degree of scrutiny than is usual in assessing a settlement's fairness." *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-0940-DLI-JO, 2019 WL 8137325, at *3 (E.D.N.Y. Aug. 15, 2019) (citing *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990)).  "In determining whether a settlement is fair, reasonable, and adequate, the District Court examines the negotiating process leading up to the settlement [, i.e., procedural fairness,] as well as the settlement's substantive terms [, i.e., substantive fairness]." McReynolds v. Richards-Cantave, 588 F.3d 790, 803–04 (2d Cir. 2009) (citing D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir.2001) (alteration in original) (internal quotation marks omitted)).

A.    Procedural Fairness

"With respect to procedural fairness, … a District Court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel ... possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *McReynolds*, 588 F.3d at 804 (citing *D'Amato*, 236 F.3d at 85) (alterations in original) (internal quotation marks omitted).  "In the procedural fairness inquiry, a court must analyze the negotiation process in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *In re Parking Heaters,* 2019 WL 8137325, at *3 (citing *In re Payment Card Interchange Fee &*

*Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 221 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) (internal quotation marks omitted).  "Accordingly, [a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016) (citing *Massiah v. MetroPlus Health Plan, Inc.*, No. 11–CV–5669, 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012) (internal quotation marks omitted).

Here, as discussed *supra*, Plaintiffs' counsel is experienced in class action litigation, conducted extensive investigations, including in Spanish in Portuguese, and engaged in two rounds of briefing to oppose Defendants' multiple motions to dismiss. *See* Mem. of Law at 6, ECF No. 118-1.  Moreover, the Settlement is the product of arm's length negotiations between the parties' counsel, before a neutral and experienced mediator. *Id.* at 2,7.  These facts support the conclusion that this settlement process was procedurally fair and that the "plaintiffs' counsel … possessed the experience and ability, and have engaged in the discovery[] necessary to effective representation of the class' interests." *In re Parking Heaters,* 2019 WL 8137325, at *3 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

B. <u>Substantive Fairness</u>

In determining whether a proposed settlement agreement meets this standard, district courts in the Second Circuit have traditionally been guided by the factors set forth in *City of Detroit v. Grinnell Corporation,* 495 F.2d 448 (2d Cir. 1974).

1. <u>Grinnell Factors</u>

The nine *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). "All nine factors need not be satisfied; rather, a court should look at the totality of these factors in light of the particular circumstances." *In re Top Tankers, Inc. Sec. Litig.*, No. 06-CV-13761 (CM), 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (internal quotation marks and citation omitted).

### a.  *The complexity, expense, and likely duration of the litigation*

The complexity, expense, and likely duration of the litigation favor the proposed settlement.  "Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain to litigate." *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349-NGG-RER, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (internal citations and quotation marks omitted).  This case has been pending for over three years, against foreign defendants, some of which have still not been served. *See generally* Compl., ECF No. 1.  The claims involve allegations of fraud and collusion that reached the highest levels of the Peruvian government, the evidence of which is possessed mainly in Peru by the unserved defendants, or by third-parties or who are not subject to United States discovery laws. *See* Mem. of Law at 10, ECF No. 118-1.  Assuming Plaintiffs defeated Defendants' Motion to Dismiss, ECF No. 94, disposition of this case would likely require subsequent motions for class certification and summary judgment and a multi-week trial, all before any class members might hope to receive any recovery. *See id.*

b.  *The reaction of the class to the settlement*

The reaction of the class favors the proposed settlement.  "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118.  Here, more than 13,600 copies of the Notice and Proof of Claim were mailed to potential Settlement Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*. *See* Murray Decl., ¶¶11-12, ECF No. 118-5; *see* Mem. of Law at 11, ECF No. 118-1.  Additionally, a settlement-specific website was created where key Settlement documents were posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. Murray Decl. ¶14, ECF No. 118-5.  Settlement Class Members had until November 10, 2020 to object to the Settlement or request exclusion from the Settlement Class. Mem. of Law at 11, ECF No. 118-1.  As of the final fairness hearing, there had not been a single objection to the Settlement, nor any requests for exclusion. *See* Mem. of Law at 14, ECF No. 118-1.

c.  *The stage of the proceedings and the amount of discovery completed*

The stage of the proceedings and the amount of discovery completed favors the proposed settlement.  While the parties need not have engaged in extensive discovery, *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982), a sufficient factual investigation must have been conducted to afford the Court the opportunity to "'intelligently make . . . an appraisal' of the Settlement," *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting *Plummer,* 668 F.2d 654).  In addition, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (alterations in original) (quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

- 23 -

The parties have not engaged in formal discovery.  Nevertheless, the various official investigations and subsequent media reports offer a great deal of insight into the veracity of Plaintiffs' allegations against Defendants. *See, e.g.,* Letter re: New Factual Development, ECF No. 57.  To that end, Plaintiffs repeatedly filed additional information from news outlets, and two amended complaints, as it learned more about Defendants' alleged malfeasance. *See* Am. Compl., ECF No. 22; 2d Am. Compl., ECF No. 86.  Moreover, the parties clearly took adversarial positions in the litigation prior to settlement.  Defendants filed multiple motions to dismiss, one of which was still pending at the time of the Settlement. *See* Defs.' Mot. to Dismiss, ECF No. 94.

### d.  *The risks of establishing liability*

The risks of establishing liability favor the proposed settlement.  In considering this factor, the Court need not adjudicate the disputed issues or decide unsettled questions; rather, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).  Here, Plaintiffs would face substantial risks in establishing liability. Defendants' Motion to Dismiss, ECF No. 94, is stayed pending approval of the proposed settlement. *See* Order, 17-CV-1105 (E.D.N.Y. Feb. 11, 2020).  Should the Settlement collapse, Plaintiffs would have to first defeat Defendants' motion, which is not guaranteed as Defendants' have argued that Plaintiffs have not sufficiently alleged Defendants' scienter which is often the most difficult and controversial aspect of a securities fraud claim. *See* Mem. of Law at 9; *see Kalnit v. Eichler,* 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000), *aff'd,* 264 F.3d 131 (2d Cir. 2001)*.* Beyond scienter, Plaintiffs' still must adequately plead falsity, materiality, and loss causation, all of which pose their own impediments to success. *See* Mem. of Law at 9, ECF No. 118-1.

- 24 -

> ### e.    *The risks of establishing damages*

The risks of establishing damages favors the proposed settlement.  "Courts have observed that proof of damages in a securities fraud case is always difficult and invariably requires expert testimony." *Mikhlin,* 2021 WL 1259559, at \*6 (internal quotation marks and citation omitted). Here, Defendants argued that Plaintiffs had not adequately alleged, and could not prove, loss causation with respect to alleged misrepresentations concerning Graña's internal controls. Joint Decl., ¶36.  Accordingly, Plaintiff explains that they would have had to rely heavily on expert testimony to establish loss causation and damages. *See* Mem. of Law at 9.  This would likely lead to a both parties presenting conflicting expert testimony, making it "virtually impossible to predict which side's testimony would be found more credible, as well as which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions." *Mikhlin,* 2021 WL 1259559, at \*6 (citing *Strougo v. Bassini,* 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (internal quotation marks omitted).

> ### f.    *The risks of maintaining the class action through trial*

The risks of maintaining the class action through trial favors the proposed settlement. "Courts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be denied." *Mikhlin,* 2021 WL 1259559, at \*6 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (internal citation omitted).  Here, the parties stipulated to class certification solely for the purpose of settlement.  If the class action were litigated, however, Defendant would likely oppose certification of a litigation class and may have meaningful arguments for this opposition, the risk of which supports the proposed settlement. *See Garland v. Cohen & Krassner*, No. 08-cv-4626 (KAM), 2011 WL 6010211, at \*8 (E.D.N.Y. Nov. 29, 2011) (citing *In*

*re Med. X–Ray*, 1998 WL 661515 (possibility that defendants would challenge maintenance of a class in the absence of settlement was considered a risk to the class and potential recovery)).

g.   *The ability of the defendant to withstand greater judgment*

The ability of the defendant to withstand a greater judgment favors the proposed settlement.  This factor stands for the proposition that if a defendant could not withstand a greater judgment than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate. *See In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd sub nom.*, *In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997).  Here, it is undisputed that Graña is currently suffering financial difficulties.  *See* 1st Am. to Settlement, ECF No. 124-1.  While there is no reason to believe that Defendants could withstand a greater judgment, even if they could, it does not necessary preclude a finding that the settlement is fair. *See In re Payment Card*, 330 F.R.D. at 47 (citing *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012)).

h.   *The ranges of reasonableness of the settlement fund in light of the best possible recovery and in light of the attendant risks of litigation*

These two factors favor the proposed settlement.  "The range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation, are two *Grinnell* factors that are often combined for the purposes of analysis." *In re Payment Card*, 330 F.R.D. at 47 (citations omitted).  "In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." Id. at 48. The range of reasonableness for a settlement is a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any

litigation to completion." *Mikhlin,* 2021 WL 1259559, at *8 (citing *Wal-Mart,* 396 F.3d at 119) (internal quotation marks omitted).

Here, the parties agreed to the Settlement Amount after negotiations under the direction of a neutral mediator while Defendants' motion to dismiss was still pending. *See* Mot. to Stay, ECF No. 107. The Settlement Amount represents a recovery of between 15% and 24% of reasonable recoverable damages. *See* Mem. of Law at 17. In light of the substantial litigation risks to Plaintiffs, as discussed *supra*, this likely represents the best possible recovery. *See Mikhlin,* 2021 WL 1259559, at *9 ("Courts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness") (citing *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *4 (S.D.N.Y. Dec. 16, 2019) (finding a settlement valued at 10.9 percent to 21.3 percent of the total possible recovery to be reasonable)).

### 2. Rule 23(e)(2) Criteria

In addition to the *Grinnell* factors, "Rule 23 also requires the court to consider several criteria – some of which overlap with the Grinnell factors – that inform whether the settlement is fair, reasonable, and adequate." *In re Parking Heaters,* 2019 WL 8137325, at *4. Notably, "[t]he Rule 23 factors do not displace the *Grinnell* factors, but rather identify the primary procedural considerations and substantive qualities that should always matter to the court's decision, focus[ing] the court ... on the core concerns of procedure and substance[.]" *Id.* (quoting Fed. R. Civ. P. 23(e)(2) comment on 2018 amendment) (alterations in original) (internal quotation marks omitted). Accordingly, the Court will consider:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).  The first two Rule 23 factors – whether the class representatives and class counsel have adequately represented the class and whether the proposal was negotiated at arm's length, see Fed. R. Civ. P. 23(e)(2)(A)-(B) – correspond to *Grinnell* factors and favor approval for the same reasons discussed *supra*.  The remaining Rule 23 factors likewise favor approval for the following reasons.

### C.  Adequacy of Relief Provided to the Class

The Court has discussed the adequacy of the relief provided to the class under the settlement agreement *supra*, however Rule 23(e)(2)(C) requires the Court to consider specifically formulated subfactors that vary, albeit minimally, from the *Grinnell* factors and other considerations the Court has previously discussed. *See* Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). The Court discusses each of these subfactors below.

### *1.  Costs, risks, and delay of trial and appeal*

As discussed in the first *Grinnell* factor, *supra*, this case has been pending for over three years, against foreign defendants, some of which have still not been served. *See generally* Compl., ECF No. 1.  Relatedly, there are legitimate threats to successfully obtaining the documentary evidence necessary to prove the Plaintiff's case.  *See* Mem. of Law at 10, ECF No. 118-1.  Further still, there are procedural hurdles that must be cleared before trial that may prove

to be insurmountable. See e.g., Motion to Dismiss, ECF No. 93.  The avoidance of the

substantial costs, risks, and delay that would occur if this litigation were to proceed to trial and/or

result in an appeal militate in favor of finding the proposed settlement fair, reasonable, and

adequate.

 2.  *Effectiveness of distribution of relief*

This factor requires courts to look at the method of processing class-member claims. *See*

Fed. R. Civ. P. 23(e)(2)(C)(ii).  "A claims processing method should deter or defeat unjustified

claims, but the court should be alert to whether the claims process is unduly demanding." *In re*

*Payment Card*, 330 F.R.D. at 40 (cting Fed. R. Civ. P. 23 advisory committee's note to 2018

amendment).  "To warrant approval, the plan of allocation must also meet the standards by

which the settlement was scrutinized — namely, it must be fair and adequate.... [a]n allocation

formula need only have a reasonable, rational basis, particularly if recommended by experienced

and competent class counsel." *In re Payment Card*, 330 F.R.D. at 40 (citing *In re WorldCom,*

*Inc. Sec. Litig.*, 388 F.Supp.2d 319, 344 (S.D.N.Y. 2005) (internal citations and quotation marks

omitted); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y.

2014) ("When formulated by competent and experienced class counsel, a plan for allocation of

net settlement proceeds need have only a reasonable, rational basis").  "[N]umerous courts have

held ... [that] a plan of allocation need not be perfect." *In re Payment Card*, 330 F.R.D. at 40

(quoting *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL

2230177, at *11 (S.D.N.Y. July 27, 2007)).

Here, the Plan of Allocation was prepared with the assistance of a damages consultant

and is based on the same methodology underlying Plaintiffs' measure of damages: the amount of

artificial inflation in the price of Graña ADSs during the Class Period. *See* Mem. of Law at 18;

*See Facebook*, 343 F. Supp. 3d at 414 (plan of allocation was fair where it was "prepared by experienced counsel along with a damages expert – both indicia of reasonableness").  The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proofs of Claim that are approved for payment from the Net Settlement Fund under the Plan. *Id*. The Plan treats all Settlement Class Members equitably, as everyone who submits a valid and timely Proof of Claim, and does not otherwise exclude himself, herself, or itself from the Settlement Class, will receive a pro rata share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more. *See id.*; *see In re Payment Card*, 330 F.R.D. at 41 (collecting cases).

### 3.  *Terms of award of attorney's fees, including timing of payment*

The Court separately discusses the proposed award of attorney's fees, *infra,* under the traditional *Goldberger* factors.  For the reasons set forth therein, the Court concludes that the amount and timing of fees provided for in the Settlement agreement are fair and reasonable.

### 4.  *Any agreement required to be identified under Rule 23(e)(3)*

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal" of settlement. Generally, this provision has been read to reference the settlement agreement itself, including attorney's fees awarded pursuant to the settlement. 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018). The Court has considered the proposed settlement and finds that its terms provide adequate relief to the class.

### D.  Equitable Treatment of Class Members Relative to Each Other

Finally, under the agreement, the class members are treated equitably relative to each other. Class Members will receive a pro rata share of the Net Settlement Fund in the proportion

that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.

Therefore, in light of the foregoing, this Court respectfully recommends that the Settlement be approved as fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

III.    Attorneys' Fees

Pursuant to the Settlement Agreement, Plaintiffs seek and attorneys' fee award of 25% of the Settlement Amount and $54,774.05 in costs. *See* Attys' Fees at 1, ECF No. 118-2.  The Court has reviewed the documents submitted by class counsel in support of their request for attorney's fees and costs, including attorney declarations, billing records, and receipts/invoices for the claimed costs. For the reasons discussed below, the Court finds that an award of award of 25% of the Settlement Amount and $54,774.05 in costs is reasonable.

A.    The Goldberger Factors

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees . . . ." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  "The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Parking Heaters,* 2019 WL 8137325, at *7 (citing *Wal-Mart*, 396 F.3d at 121) (internal quotation marks omitted).  "A court applying either method should consider the following *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy

considerations." *In re Parking Heaters,* 2019 WL 8137325, at *7 (citing *Goldberger*, 209 F.3d at 50).

### 1.   The time and labor expended by class counsel

Plaintiffs' counsel avers that a total of 3,987 hours were spent working on this litigation. *See* Attys' Fees at 8, ECF No. 118-2.  The time and labor expended by class counsel is reasonable considering that this case has been pending for over three years, and only settled after Defendant filed a motion to dismiss the Second Amended Complaint and the parties engaged in mediation.  Moreover, the claimed time is supported by plaintiff counsels' respective declarations and corresponding billing records. *See* Rosenfeld Decl., ECF No. 118-6; Holzer Decl., ECF No. 118-7; Trinko Decl., ECF No. 118-8.[9]

### 2.   The magnitude and complexities of the litigation

Courts have recognized that consumer class action lawsuits, like this one, are complex, expensive, and lengthy. *See*, *e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010).  As the Court has discussed, this particular case involves a number of difficult and complex questions concerning liability and damages against foreign-based defendants that would have required the introduction of voluminous documentary and deposition evidence, including the extensive use of experts. *See* Attys' Fees at 17, ECF No. 118-2.

### 3.   The risk of the litigation

"The risk of the litigation is often cited as the first, and most important, *Goldberger* factor." *MetLife*, 689 F. Supp. 2d at 361; *see also Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost factor' to be considered in

---

[9] Each attorney declaration includes exhibits with the relevant billing records, and an attestation regarding their contemporaneous creation.

determining whether to award an enhancement.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)). The Second Circuit has recognized that risk is inherently associated with a case undertaken on a contingent fee basis. *See Grinnell*, 495 F.2d at 470 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success"). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *MetLife*, 689 F. Supp. 2d at 361 (internal quotation marks and citation omitted). The attorneys for the class undertook this litigation on a contingent basis and have received no payment for their work during the roughly three years that the case has remained pending, which counsels in favor of the proposed fee. *See* Attys' Fees at 14, ECF No. 118-2.

The difficulties class counsel would have had in establishing the class's claims to relief, which the Court has discussed throughout this opinion, also present serious risks in the absence of settlement. Defendant has already filed multiple motions to dismiss which presents significant defenses to Plaintiffs' claims. Assuming that Plaintiffs prevailed over Defendants' motion to dismiss, they would need to move for certification of the class, which would likely be contested, and then survive any additional dispositive motion practice. *See In re AOL Time Warner ERISA Litig.*, No. 02-CV-8853 (SWK), 2006 WL 2789862, at *8 (S.D.N.Y. Sept. 27, 2006) ("[E]ven the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement."). Further, even if this case were to overcome all of these potential obstacles and proceed to a jury trial, obtaining a meaningful recovery would be far from a sure thing for Plaintiffs, especially in light of the difficulties of obtaining discovery from foreign defendants and third-parties. *See Shapiro v.*

*JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) ("Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony.") (citation omitted).  As such, this factor weighs in favor of awarding the uncontested amount of fees in the settlement.

### 4.    *The quality of representation*

As the Court stated *supra*, class counsel in this case is experienced and adequate. Plaintiffs' counsel are experienced securities class action and complex litigation practitioners. *See* Rosenfeld Decl., ECF No. 118-6; Holzer Decl., ECF No. 118-7; Trinko Decl., ECF No. 118-8.  The Court has taken into account the quality of class counsel's representation in determining that the uncontested amount of fees in the settlement, and this factor favors awarding the uncontested amount of fees in the settlement.

### 5.    *The requested fee in relation to the settlement*

A fee award equal to 25% of the settlement amount is reasonable in the circumstances of this litigation.  *See In re Parking Heaters*, 2019 WL 8137325, at *7 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445-47 (E.D.N.Y. 2014) (adopting a graduated schedule that dictated, in relevant part, a fee award of 33 percent for settlements up to $10 million and 30 percent for settlements between $10 million and $50 million) (collecting cases).  The claimed fees are also reasonable under the lodestar method. Class counsel states that they have spent, in the aggregate, 3,987 hours in the prosecution of this case, producing a total loadstar amount of $2,483,523.75 when multiplied by counsel's billing rates. *See* Attys' Fees at 8, ECF No. 118-2.  This results in a loadstar multiplier of 2.01[10].

---

[10] $5,000,000 / $2,483,523.75 = 2.01

Plaintiff counsel's contemporaneous billing records reflect hourly rates that exceed those normally approved in this district[11], but the overall claimed fees remain reasonable even after reducing those rates to conform with local practices. *See, e.g., Bennett v. Asset Recovery Sols., LLC*, 2017 WL 432892, at *7 (E.D.N.Y. Jan. 5, 2017) (citing *Ferrara v. CMR Contracting LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) (collecting cases) (report and recommendation), *adopted*, 2017 WL 421920 (E.D.N.Y. Jan. 31, 2017)); *See See* Rosenfeld Decl., ECF No. 118-6; Holzer Decl., ECF No. 118-7; Trinko Decl., ECF No. 118-8.  Applying reduced hourly rates, a reasonable aggregate lodestar is $1,403,466.50, which means that their claimed fee would represent a multiplier of 3.56[12].  This is below what has been deemed reasonable for the common fund settlements in securities class action cases in this circuit. *See Athale v. Sinotech Energy Ltd.*, No. 11 CIV. 05831 (AJN), 2013 WL 11310686, at *8 (S.D.N.Y. Sept. 4, 2013) (collecting cases that found as reasonable "lodestar multipliers between four and five"); *see Carlson v. Xerox Corp.,* 355 F. App'x 523, 526 (2d Cir. 2009) ("the resulting multiplier would be 3.59, still below the 3.6 average and in line with the 3.1 median for similar cases").  This factor thus favors approval of the uncontested amount of fees in the settlement.

### 6. *Public policy considerations*

"Public policy favors the award of reasonable attorneys' fees in class action settlements." *Jermyn v. Best Buy Stores, L.P.*, No. 08-CV-214 (CM), 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012).  Courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a

---

[11] "$200 to $450 for partners, $250 to $395 for "of counsel" attorneys, $100 to $300 for associates, and $70 to $100 for paralegal assistants" *In re Parking Heaters*, 2019 WL 8137325, at *8.

[12] $5,000,000 / $1,403,466.50 = 3.56

contingency fee basis. *See In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515-16 (S.D.N.Y. 2009).  Moreover, "the Supreme Court has ... emphasized that private actions provide a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373–74 (S.D.N.Y. 2002) (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (alteration in original) (internal quotation marks omitted).  Here, Defendants are comprised of a foreign company and it's directors who listed ADSs on an American exchange and stand accused of violating, *inter alia*, the Exchange Act through bribery, fraud, and other criminal acts. *See generally* 2d. Am. Compl., ECF No. 86.  Certainly, based on the foregoing, the public policy considerations favoring the award of attorney's fees to Plaintiffs' counsel militate in favor of awarding reasonable attorney's fees.

Therefore, in light of the foregoing, this Court respectfully recommends that Plaintiff counsels' application for attorneys' fees in the amount of 25% of the Settlement Fund be granted.

IV.    Costs

Pursuant to the Settlement Agreement, Plaintiffs' counsel requests an award of $54,774.05 in costs. Attys' Fees at 20.  "Courts routinely note that counsel is entitled to reimbursement . . . for reasonable litigation expenses." *Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118 (VM), 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987)).  In this case, Plaintiffs' counsel have submitted documentary evidence supporting their request for an award of costs. *See* Decl. of David A. Rosenfeld ("Rosenfeld Decl."), ECF No. 118-6; Decl. of Corey D. Holzer ("Holzer Decl."), ECF No. 118-7; Decl. of Curtis V. Trinko ("Trinko Decl.'), ECF No. 118-8.

Therefore, in light of the foregoing, this Court respectfully recommends that Plaintiff counsels' request for costs in the amount of $54,774.05 be granted.

V.    <u>Incentive Awards</u>

Plaintiffs also request incentive awards of $4,000 for Goldberg, a named Plaintiffs in this action. *See* Attys' Fees at 21, ECF No. 118-2.  Such awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (internal quotation marks and citation omitted); *see also Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001) ("An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.").

Goldberg submitted a declaration detailing her efforts in this action. Declaration of Marcia Goldberg ("Goldberg Decl."), ECF Nos. 118-4.  Goldberg estimates that she has expended 50 hours on the prosecution of this litigation, during which she "regularly reviewed filings made with the Court, including drafts. I understood my duty to serve the interests of the Class and was prepared to act." *Id.* ¶ 3,7.  The incentive award requested by Goldberg is modest relative to others awarded in our Circuit. *See Kindle*, 308 F. Supp. 3d at 718 (E.D.N.Y. 2018) (awarding named plaintiff $10,000 and collecting cases granting incentive awards in this amount).

Therefore, in light of the foregoing, this Court respectfully recommends that Plaintiff counsels' application for an incentive award for Plaintiff Goldberg in the amount of $4,000 be granted.

**CONCLUSION**

For the reasons set forth above, the Court respectfully recommends that Plaintiffs'
Motion for Final Approval of the Class Action Settlement and Approval of the Plan of
Allocation and an Award of Attorneys' Fees, Costs, and Incentive Award to Plaintiff Goldberg
be GRANTED.

**OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil
Procedure, the parties shall have fourteen (14) days from service of this Report and
Recommendation to file written objections.  Failure to file timely objections shall constitute a
waiver of those objections both in the District Court and on later appeal to the United States Court
of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir.
2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas
v. Arn*, 474 U.S. 140 (1985). Responses to any objections shall be due fourteen (14) days from
service of the objection. *See* Fed. R. Civ. P. 72(b)(2).

**SO ORDERED.**

      /s/

The Hon. Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
      August 13, 2021