**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

In re GRAÑA Y MONTERO S.A.A.
SECURITIES LITIGATION

**MEMORANDUM AND ORDER**

17-CV-1105 (LDH) (ST)

This Document Relates to:

ALL ACTIONS.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

    This is a consolidated action seeking relief under the Securities Exchange Act of 1934 on behalf of all purchasers of Graña y Montero S.A.A.'s American Depository Shares from July 24, 2013, through February 24, 2017. *See* Second Am. Compl., ECF No. 86. The parties filed a Stipulation and Agreement of Settlement ("Settlement Agreement") on July 2, 2020.[1] *See* Settlement Agreement, ECF No. 112-2. On September 14, 2021, the Court approved the Settlement Agreement and directed the Clerk of Court to enter judgment and close the case. *See* Order Adopting R&R, ECF No. 126; Entry of J., ECF No. 127. On February 7, 2022, the Court granted the parties' joint motion to vacate the judgment, and held the case in abeyance. *See* Mot. to Vacate J., ECF No. 128; Order Adopting R&R, dated February 7, 2022. On April 8, 2022, the parties notified the Court that Defendants had made full settlement payment, and requested that the Court reinstate the judgment. *See* Letter, ECF No. 131. On January 6, 2023, the Court granted the request. *See* Order Adopting R&R, dated January 6, 2023.

    Before this Court is a letter motion from Lead Counsel for Plaintiffs and the Settlement Class for an order to disburse the remaining funds in the Net Settlement Fund to Legal Services

---

[1] Over time, the parties stipulated and agreed to three amendments to the Settlement Agreement. *See* First Am. to Settlement Agreement, ECF No. 124-1; Second. Am. to Settlement Agreement, ECF No. 129-1; Third Am. to Settlement Agreement, ECF No. 131-1.

NYC and the New York Bar Foundation (the "Motion"). *See* Mot., ECF No. 136. The Honorable LaShann DeArcy Hall referred the Motion to this Court. *See* Docket Order, dated August 2, 2024. For the reasons discussed below, the Motion is DENIED without prejudice.

## **BACKGROUND**

This Court presumes familiarity with this case's factual background. The Settlement Agreement provides the process for distributing the funds in the Net Settlement Fund. *See* Settlement Agreement ¶ 5.9. Paragraph 5.9 states in part:

> If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of $10.00. Redistributions shall be repeated until the balance remaining in the net settlement fund is *de minimis*. Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel and approved by the Court.

*Id*.

Lead Counsel has distributed the final settlement payment to the class, and a balance of approximately $14,100.00 remains in the Net Settlement Fund. *See* Mot. Lead Counsel claims that it is not economically feasible to distribute the remaining funds to the class because the cost of distribution would exceed the amount in the fund. *Id*. Lead Counsel now asks the court to approve the donation of the remaining funds to Legal Services NYC and the New York Bar Foundation per paragraph 5.9 of the Settlement Agreement. *Id*. Lead Counsel describes the organizations as "non-profit organizations devoted to, among other things, supporting law-related programs of legal services organizations throughout New York City and New York State, and which are unaffiliated with Lead Counsel." *Id*.

2

## **LEGAL STANDARD**

The donation of residual settlement funds is often referred to as a "*cy pres*" designation, named after a doctrine originating in Roman and English trust law. Martin H. Redish et al., *Cy Pres Relief & the Pathologies of the Modern Class Action: A Normative & Empirical Analysis*, 62 Fla. L. Rev. 617, 625 (2010); *see Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) ("Cy Pres means 'as near as possible' and 'courts have utilized Cy Pes distributions where . . . there are unclaimed funds.") (citing 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10:17 (4th ed. 2002)).

In the class action litigation context, *cy pres* awards may be made when, for example, distribution of the remaining funds to the class is infeasible, and the designees reasonably approximate the class's interests. *See In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 852–53 (S.D.N.Y. 2016). Indeed, "[t]he permissibility of distributions pursuant to *cy pres* principles is well-established so long as class members benefit, even if indirectly, from the distribution." *Reyes v. Summit Health Mgmt., LLC*, 22-CV-9916 (VSB), 2024 WL 472841, *5 (S.D.N.Y. Feb. 6, 2024). As such, courts require some showing that proposed *cy pres* recipients reasonably approximate the class's interests. *See, e.g.*, *Marin v. Apple-Metro, Inc.*, 12-CV-5274 (CLP), 2024 WL 4363629, *11 (E.D.N.Y. Mar. 29, 2024) (seeking justification as to why a selected *cy pres* recipient reasonably approximates the interests of the class); *see Chen v. XpresSpa at Terminal 4 JFK LLC*, 15-CV-1347 (CLP), 2018 WL 1633027, *4 (E.D.N.Y. Mar. 30, 2018) ("While The Manhattan Children's Center may be a well deserving charity, there has been no showing that the interests of this organization 'reasonably approximate' the interests of the employee class members or members of the putative collective action. Indeed, the organization is not particularly well-suited

to members of the Class or Collective who reside outside of the New York City area and is not even located in this Judicial District."); *see also Reyes*, 2024 WL 472841, *5.

## DISCUSSION

Here, the Settlement Agreement provides that any *de minimis* balance that is not feasible to reallocate to the class be donated to non-profit charitable organization(s) serving the public interest selected by Lead Counsel and approved by the Court. Settlement Agreement ¶ 5.9. The Settlement Agreement specifically states that a *de minimis* balance "not feasible or economical to reallocate, shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel and approved by the Court." *Id.* It is unclear, based on the Motion, whether Lead Counsel thinks that this language essentially contracts around the doctrine of *cy pres*—and whether that is permissible—or merely paraphrases that standard. Assuming the Settlement Agreement invokes the *cy pres* doctrine, it is unclear whether Legal Services NYC and the New York Bar Foundation reasonably approximate the interests of the class. From the letter Motion alone, this Court does not have sufficient information to assess these issues. Therefore, the Motion is denied without prejudice, and Lead Counsel may refile.

Any new motion to disburse the residual funds to any non-profit charitable organization should address whether the Court should interpret paragraph 5.9 of the Settlement Agreement to contract around the *cy pres* doctrine or find that the clause comports with the *cy pres* doctrine. If Lead Counsel intends to argue that the *cy pres* doctrine does not apply, they should explain their legal basis for that assertion. If Lead Counsel seeks to invoke the *cy pres* doctrine, they should explain, in detail, how the organizations that they propose reasonably approximate the class's interests. *See Citigroup*, 199 F. Supp. 3d at 852–53; *see also Masters*, 473 F.3d at 436.

## CONCLUSION

For the foregoing reasons, this Motion is DENIED without prejudice.

**SO ORDERED.**

/s<br>
Steven Tiscione<br>
United States Magistrate Judge<br>
Eastern District of New York

Dated: Central Islip, New York<br>
March 5, 2025